*Post *v.* Building & Loan · Association.

(*Knoxville.* October 14, 1896.)

1. Building and Loan Associations. *Usury.*

Loans made by a building and loan association at a fixed premium in excess of the legal rate of interest, without free and competitive bidding, are usurious. (*Post, pp. 410, 411.*)

Cases cited and approved: McCauley *v.* Workingman's B. & L. Association, *post, p.* 421; Patterson *v.* Building & Loan Association, 14 Lea, 696; 42 Ohio, 655.

2. Same. *Dues paid on stock not credited on usurious loan, when.*

Payments of dues upon stock in a building and loan association cannot be credited upon an usurious loan to stockholders in winding up the affairs when the association is insolvent, since such credit would relieve the borrowing shareholders from their share of the losses, and throw them all on the nonborrowing stockholders. (*Post, pp. 411–417.*)

Cases cited and approved: Rogers *v.* Hargo, 92 Tenn., 35; Pioneer, etc., Savings Association *v.* Cannon, 96 Tenn., 599; 115 Pa., 273; 61 Fed. Rep.. 446.

3. Same. *Payment of dues in advance.*

Payment of dues in advance, under an agreement with a building and loan association for interest upon the advances until they are absorbed by dues, does not entitle the stockholder, in case of the insolvency of the association, to be treated as a creditor with the right to repayment of his advances, with interest, especially when the agreement for interest thereon was not warranted by the charter. (*Post, pp. 417, 418.*)

4. Same. *Mistaken declaration of maturity of stock.*

A mistaken declaration of the maturity of stock by a building and loan association, when the stock is, in fact, not matured,

---

*As to the right to apply payments made on stock in a building and loan association to a mortgage given on a loan, see note to *Southern B. & L. Association* v· *Anniston L. & T. Co.* (Ala.), 29 L. R. A., 120.—Reporter.

Post *v.* Building and Loan Association.

will not make the stockholder a creditor, or put him in the position of a holder of matured stock, in subsequently winding up the affairs of the association when insolvent. (*Post, pp. 418–420.*)

FROM KNOX.

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

GREEN & SHIELDS for Post.

WEBB & McCLUNG for Loyal.

J. PARKER and C. R. McILWAINE for S. V. Armstrong.

LUCKY, SANFORD & TYSON for Condon.

CORNICK, HENDERSON & SANSOM for Post.

HENDERSON, JOUROLMON, WELCKER & HUDSON for Brown.

WILKES, J. This is a bill filed to wind up the defendant company as an insolvent corporation, and to properly and equitably distribute its assets. It was filed by a shareholder and creditor. The association answered and admitted its insolvency, and a decree was pronounced maintaining the bill as a general creditors' bill, adjudging the corporation as insolvent, and requiring all creditors to come in and

file their claims, and a receiver was appointed. The Chancellor passed upon the rights of the various parties, and gave decree accordingly. The case was appealed, and the Court of Chancery Appeals has passed upon the questions involved, and the cause is now before us on appeal by several parties.

The questions presented are important, and some of them quite difficult. We are content to mention and dispose of them as presented. It is found as a matter of fact by the Court of Chancery Appeals that the by-laws of the association contain a provision that no funds of the association should be loaned for a greater premium than thirty per cent., and, as a matter of fact, that the loans were not made under competitive bids, but by agreement between the borrowers and association at a fixed premium, and were evidenced by notes payable six years after date, and secured principal and interest by mortgages upon real estate. These mortgages further provided to secure the dues and fines prescribed by the by-laws. No loans appear to have been made to parties other than stockholders in the association, and the stock of the borrowing shareholder was in each instance by the contract pledged to the association to secure the loans made, in addition to the real estate mortgages.

The Court of Chancery Appeals finds that these mortgages and notes matured at a definite time and were enforceable at maturity, irrespective of the maturity of the stock hypothecated to secure the loans.

The Court of Chancery Appeals held, under this finding and statement of facts, that all of the loans made by the association to its members were in violation of the laws of the State in regard to usury, and that in the adjustment and settlement of the rights of the parties the loans should be purged of all usury. It is not necessary to dwell upon the question of whether the loans as made by the association were unlawful, unwarranted, and usurious. We have recently passed upon this question in one of its features, in the case of *McCauley* v. *The Workingman's Building & Savings Association*, in which we held that such loans were unlawful and usurious, under the statutes of our State, when the premium was fixed upon which loans could be made, and the money was not loaned under free and competitive bidding, as required by the statutes. It is not necessary for us to go further in this case. *McCauley* v. *Workingman's Building & Savings Association*, *post*, *p.* 421; in accord *Patterson* v. *Building & Loan Association*, 14 Lea, 696; *Bates* v. *The People's Building & Loan Association*, 42 Ohio, p. 655; Endlich on Building Associations (2d Ed.), 409, 411; Endlich on Building Associations (1st Ed.), 394, 397; 18 L. R. A., page 134, note.

The next question is, treating the loans as usurious, upon what basis shall they be adjusted in the distribution of the assets of an insolvent corporation and in the winding up of its affairs? The Court of Chancery Appeals held that the bor-

rowing stockholders should be charged with the
money actually obtained by them from the associa-
tion, with six per cent. interest per annum upon
such amount, but should have credit thereon for all
the moneys paid by them into the association on any
and all accounts, including the payment of dues
upon their stock, but that they were not entitled
to have these payments credited upon the principle
of partial payments.   That Court was of the opin-
ion that the contracts of the members to pay dues
upon their stock and to repay their loans were in-
dissolubly tied together; that the payment of the
former was intended as a payment *pro tanto* of the
latter, and, inasmuch as the loans were usurious,
the subscriptions were also tainted, and the borrow-
ing stockholders were entitled to have their pay-
ments on stock dues credited upon the loans from
the association.   The Court further held that, as a
matter of fact, the dues paid into the association
were paid in on stock, and that under a proper
construction of the contracts and law applicable to
them, the agreement to pay dues, fines, and interest,
all entered into the undertaking of the borrowing
member when he made his loan, and the taint of
usury therefore attached to the whole transaction;
and for this reason that Court concludes that the
payments upon stock should be credited upon the
loans.   The effect of this would be to relieve the
borrowers from all losses in the business of the as-
sociation and throw such losses exclusively upon the

nonborrowing stockholders. We think the question involved in this feature of the case is not one of fact, but of law and fact, to be determined by a proper construction of the charter, by-laws, and contracts entered into by the borrower and stockholder with the association. We are of opinion the Court of Chancery Appeals is in error in not observing the distinction, well settled, between the borrower's relation to the association as a borrower and as a stockholder. Upon this point that Court says: "The one distinct from the other may be thinkable, but from a judicial view they are essentially parts of one and the same contract so far as the construction of the contract is concerned. This being so, the element of usury, tainting the note, taints also its necessary element of payment, as fixed by the contract."

The subscriptions to stock and the obtaining a loan are two distinct things, and, while one is clearly dependent upon the other, still they are not indissolubly connected. A shareholder may never become a borrower. While it is the original scheme that all shareholders will become borrowers, still it is not compulsory. Likewise, a borrower is not, in every instance, a stockholder, as outsiders are allowed to borrow surplus funds of the association after the preference demand of the shareholders is satisfied. But, as to borrowing stockholders, their contracts and obligations as shareholders and borrowers are, in many respects, distinguishable and different. The

shareholder enters primarily into his contract of subscription. This is a plain, simple contract, tainted with no usury or other irregularity, and could stand alone. Having made this contract and become a subscriber, he applies for a loan. He states in his application that he is a stockholder, and thus puts himself in position to claim the preference given to the stockholders in making loans. Payments made on stock are simply investments in stock, whether the shareholder be a borrower or not. These payments have no direct relation to loans made to members. It is true that in solvent, going concerns, under certain contingencies, as in cases of withdrawal or maturity of the scheme, the borrower has the right to have the amounts due to him upon his stock credited upon his indebtedness to the association. But this payment of dues upon stock is not *ipso facto* a payment on his loan. It is more in the nature of a set-off or adjustment of cross demands and claims. If the borrower prefer, he can pay his loan in money, and the association cannot force him to credit the amount of his stock payments upon his indebtedness to the association. The relations of borrower and stockholder are separate and distinct. Endlich on B. & L. Associations (2d Ed.), Secs. 448, 477, 478.

Mr. Endlich says: "It has, therefore, become a well-recognized doctrine that the payment of dues upon stock are not payments on the mortgage debt and do not *ipso facto* work an extinguishment (*pro*

*tanto*) of so much of the mortgage, and hence they are not to be regarded as partial payments, and the statutory rule for computing interest on partial payments is inapplicable to them." Endlich on B. & L. Associations (2d Ed.), Sec. 477. Again, it is said, "It may be safely stated that this doctrine has forced its own recognition upon the Courts of nearly every State in the Union as well as England. It may, it is true, not have found upon all occasions express and explicit judicial sanction. In theory it may have been persistently denied. Yet, in its results, it has, in some form or other, been everywhere applied, and, in the condemnation of the outrageous consequences flowing from the opposite doctrine, it has, at some time or other, been everywhere confirmed." Endlich on B. & L. Associations (2d Ed.), Sec. 123; *Rogers* v. *Hargo*, 8 Pickle, 35; *Pioneer Savings & Loan Association* v. *Cannon*, 96 Tenn., 599.

The rule in regard to the distribution of the assets of insolvent associations, in so far as it relates to borrowing stockholders, is laid down in the 8 Pickle case, *supra*, to be that the borrowing stockholder will be charged with the money actually received by him, with interest from date of its receipt. He is credited with all payments of interest and premiums as of dates when made. He is not allowed credit for amounts paid as dues on his stock. After all liabilities of the company are paid, the remaining fund is distributed *pro rata* among stock-

holders, whether borrowers or not, upon the basis of the amounts paid by them respectively, as dues upon the stock. This is in accord with the rule laid down in *Strahen* v. *Franklin Savings Fund and Loan Asso.*, 115 Pa., 273 (279), and as now held in Endlich on B. & L. Associations (2d Ed.), Secs. 514, 515, though formerly the same author held to the opposite view. See, also, *Fowler* v. *American B. & L. Asso.*, 61 Fed. Rep., 446.

It is insisted, and very ably urged, that while this is the correct rule in winding up associations which are merely insolvent, and which have conducted a legitimate business, a different rule must be adopted when the business of the association has been conducted upon an illegal and usurious basis, and that in such cases the borrower has the right to have every payment made by him to the lender credited on his loan. We see no tenable ground for such distinction. The stock subscriptions and loans, as we have seen, are separate transactions, and it is only as to the latter that the question of usury arises. The subscriptions for the stock are not tainted with usury, and there is no reason why the borrower who has paid usury upon his loan, should be allowed to recoup it by receiving back the payments made on his stock.

Each class must stand upon its own basis, and the shareholders' rights, as between themselves, must be adjusted on the status of their shares, not affected by any questions of usury involved in the

loans.    The stockholders must bear the losses made in the business between them, but if the shareholders whose loans are tainted with usury are allowed credit for their payments on stock, they will escape their share of such losses, and the same will be thrown on the nonborrowing stockholders.

The next question arising is as to the right of certain stockholders who paid dues in advance of their maturity.    These stockholders are not borrowers, but they claim that, having paid dues in advance, under an agreement with the association that interest should be allowed upon such advance payments until absorbed by dues, they should be treated as creditors of the association, and the amounts advanced as loans to it be repaid, with interest.

The charter forbids the company to retain a monthly payment exceeding $2 per share, but does not, in express terms, prohibit it from allowing stockholders to pay in advance if they so desire. But here the advances were made under an agreement that the parties making the advances should be allowed interest upon the amounts advanced.    It was, in some respects, the same thing as if the association, in order to accommodate its borrowers, had gone to some bank or outside person and borrowed money to put into the association.

Such a proceeding is not warranted by the charter, or the proper scope and scheme of a building and loan association.    They should not be borrowers of money, but only lenders for the proper purposes

13 p—27

of their creation. To allow the amounts advanced to be paid back would be to sanction such proceedings as legitimate loans, to convert capital into loans, and to create preferred stock, in order to work out supposed equities. We think the proper holding upon this matter is to treat the advances as payments upon stock, and not as loans to the company; and this is, in effect, carrying out the intention of the parties, which was to pay up their stock in advance, and, by anticipation of its maturity, receiving a discount by so doing.

The next question presented is as to the right of a certain stockholder (Armstrong), whose stock was declared matured in December, 1894, but who had failed to draw anything from the association. It is insisted that he should be paid the par value of the stock, as a creditor of the association, and not be required to share as a stockholder. The Court of Chancery Appeals held: In sound reason and legal analogy, the positions of the members holding stock in a series declared through mistake to be matured, when in point of fact it had not matured, is, in respect to the assets of the insolvent corporation, the same in effect, and as to results, as that of members giving notice. They are not entitled to be paid in preference to other stockholders. They will prorate with all other stockholders in the assets of the association after the expenses of the administration of its affairs are paid. The Court of Chancery Appeals found that this se-

ries of stock had been declared matured by mistake, and that the. real value of petitioner's share. was not $1,000, but only $792.80, and the contention now is that he should be paid, if not the par value ($1,000) of his stock, its real value of $792.80. If this contest were alone with the association as a solvent, going concern, this contention might be sustained, perhaps, upon the theory that the association would be estopped to set up its mistake in declaring the stock paid up, and in such case would be required to pay the stockholder as it had agreed; especially in consideration of the fact that he was no longer a member after his stock matured, and had no right to vote or to withdraw on notice, secured by the by-laws to unmatured, but not to matured, stockholders. This latter was a valuable right, in the light of the fact that all stockholders withdrawing before the bill was filed were paid in full.

But, in view of the insolvency of the association, the rights of the different shareholders as among themselves, and not simply as against the association, must be considered; and the case presents itself as one purely arising out of mistake of facts and errors in the conduct of the business; and as a matter. of fact Mr. Armstrong's stock has not matured, and he does not stand in the attitude of a creditor or of a stockholder holding matured stock, but of a stockholder whose stock is not yet matured, and upon that theory his rights in a contest with his fellow-stockholders must be adjusted and settled as

a stockholder.    This applies to all shareholders who stand in the same relation and occupy the same status as does Mr. Armstrong.

It follows that the decree of the Court of Chancery Appeals must be reversed and modified in the particulars indicated, and in all other respects it is affirmed.