## CARPENTER, RECEIVER v. LEWIS.

1. CONTRACT—B. & L. ASSN.—NOTE AND MORTGAGE construed by their
terms to have been executed with reference to the laws of Tennessee.

2. B. & L. ASSN.—USURY.—The contract, under the laws of Tennes-
see, executed under the provisions of the by-laws of the plaintiff
association by providing for payment of premium bid for loan in
monthly instalments at greater rate than legal interest is usurious,
because the charter provided that money should be loaned to stock-
holders at competitive biddings, and premiums bid should be paid
in cash before loan made.

3. USURY—PRACTICE.—Where a non-resident seeks to enforce in this
jurisdiction a contract made with reference to the laws of another

State, and defendant successfully sets up plea of usury, the remedy in force in this State for collecting usurious interest will be applied.

Before BUCHANAN, J., Greenville, September, 1900. Modified.

Foreclosure by D. A. Carpenter, as receiver of the Southern Building and Loan Association, against Samuel C. Lewis. From judgment for plaintiff, defendant appeals.

*Mr. William G. Sirrine*, for appellant, cites: *Is this a South Carolina contract?* 18 S. E. R., 965; 55 S. C., 123; 51 S. C., 428. *The laws of a foreign State are presumed to be same as ours, until contrary is clearly shown:* 85 Tenn., 616; 4 Ia., 464; 2 Hill, 319; 25 S. C., 34. *Under the law as stated in McCauley v. B. & L. Assn., 97 Tenn., 421, and Post v. B. & L. Assn., 97 Tenn., 408, this is a usurious contract, even if a Tennessee contract. Plaintiff cannot apply a part of defendant's payments to losses of association, but must credit all on his debt:* 55 S. C., 117; 51 S. C., 420; 44 S. C., 121.

*Messrs. McCullough* and *Martin*, contra. The former cites: *Appeal should be dismissed, because exceptions too general:* 59 S. C., 1. *Is this a Tennessee contract?* 37 S. C., 443; 58 S. C., 552. *If so, is it usurious?* 97 Tenn., 408, 421. *If contract is valid under laws of Tennessee it will be enforced here:* 49 S. C., 402; 50 S. C., 303; 51 S. C., 33; 53 S. C., 73.

March 27, 1901. The opinion of the Court was delivered by

MR. JUSTICE POPE. Plaintiff's action against the defendant, S. C. Lewis, was commenced in the Court of Common Pleas for Greenville County, S. C., on the 7th June, 1899. By the "Case" it appears that there are two other cases of the same nature pending in the same Court between the plaintiff, D. A. Carpenter, as receiver, &c., plaintiff, against W. N. Brissey, as defendant, and the same plaintiff against S. T. Dagnall, as defendant, and by agreement ⸦ f counsel

each case is to abide by the results of the case of Carpenter, as receiver, &c., plaintiff, against Samuel C. Lewis, defendant. And further, it was agreed by the parties that the testimony in all three of the cases shall be taken in this case; and, further, "the matter of the amount due on the Brissey bond and of payments, is left open, for the reason that the deposition on the bond has not come in or been mislaid." The following is a copy of the complaint: "The complaint of the above named plaintiff respectively shows to theCourt:

"I. At the times hereafter mentioned, the Southern Building and Loan Association was a corporation chartered by and under the laws of the State of Tennessee, having its home office in the city of Knoxville, State of Tennessee.

"II. That on the 15th day of July, 1891, the defendant was a stockholder in the said association, carrying three shares of stock therein, upon which he agreed to pay a certain sum until the stock matured. at the par value of $100 per share. That while a stockholder as aforesaid, the defendant borrowed of the said Southern Building and Loan Association the sum of $150, which he agreed to pay on or before nine years from the date of the said obligation, together with interest at six per cent. per annum, payable monthly. It is further stated that 'this note is for money borrowed on three shares of the 21st series of the stock of said association, and is secured by a trust deed of even date herewith, upon a lot of land in the county of Greenville and State of South Carolina. Now if I pay promptly the monthly interest on the said sum of $150, and the monthly payments on said shares of stock, and any fines assessed under the rules of said association, and the taxes and assessments levied or made on the lot described in the mortgage or trust deed securing this obligation, and the premiums necessary to keep the house on said lot insured in such sum as said association may require (not exceeding $      ), until the said stock become fully paid in and of the value of $100 per share, then it is understood, that upon the surrender of said stock to said association, this note shall be deemed

fully paid and cancelled.   But if I fail to pay promptly when due and payable, the said taxes and assessments and insurance premiums, or make default in the payment of said monthly interests, fines and monthly payments on said stock for a period of six months after the same are, or any instalment hereof, is due, then, at the option of the said association, the whole indebtedness evidenced by this obligation (including any taxes, assessments and insurance premiums due or paid by said association), shall at once become and be due and collectible, and a foreclosure of said trust deed in the manner herein provided may be had.   It is further understood, that this note is made with reference to and under the laws of the State of Tennessee; and if paid before seven years from its date, such rebate from the premium included herein will be allowed as the board of directors of said association shall deem equitable.'

"III.  That in order to secure the said note or bond the defendant, on the 15th day of July, 1891, made, executed and delivered to the said Southern Building and Loan Association his certain deed, and thereby conveyed by way of mortgage unto the said association the following real estate: * * * It is further agreed in the said mortgage, that the said defendant should insure the house and buildings on the said lot in the sum therein specified, and keep the same insured from loss or damage by fire, and assign the policy to the said Southern Building and Loan Association, and agreed if the same was not done that the said association might insure the same and add the same to the mortgage debt.   It is further provided in the said mortgage, that the debt which it is given to secure, should be 'payable on or before nine years from date, at its home office at Knoxville, Tennessee;' and recites in terms the obligation, an extract of which is hereinabove given.

"IV.  That the said mortgage was filed in the office of the register of mesne conveyance for said county on the 29th day of July, 1891, and was duly recorded by him in book 2, page 732, reference to which is hereby craved as a part of

this complaint as specifically as if it were herein set forth.

"V. The account of the defendant with the said building and loan association on May 16th, 1899, is stated and correctly set forth in the annexed exhibit, marked A, and made a part of this complaint.

"VI. From this statement it appears that the defendant has paid sixty-eight months interest at 75 cents per month, aggregating $51, and has paid in all $112 on account of the stock carried in the Southern Building and Loan Association.

"VII. That on the 16th day of April, 1897, in a suit begun in the Chancery Court, at Knoxville, Tennessee, in Knox County, against the Southern Building and Loan Association, by J. T. Barrow *et al.,* which suit alleged, among other things, the insolvency of the said association, and sought to have the said bill sustained as a general creditor, and stockholder's bill, and to have a receiver appointed to take charge of and wind up the affairs of said association; such proceedings were had in said cause that said bill was sustained for the purpose for which it was filed, and D. A. Carpenter, the plaintiff herein, was, on the 16th day of April, 1897, appointed the receiver of the said association, and was ordered to take charge of its assets and administer the same under the orders of the Chancery Court of Knox County, Tennessee; that he gave bond in the sum of $100,000, which bond was accepted and approved by said Court; he took charge of the assets of said association, and is now engaged in winding up the same, under orders of the said Court.

"VIII. That among the assets which came into his possession as receiver, was the bond and mortgage herein sued upon, and it appears that the condition of the said bond and mortgage has been broken, and the same is now due and payable.

"IX. That under the laws of the State of Tennesseee and the direction of the said Court, the said receiver was to make with the borrowing stockholders in said association settlements upon the following basis, to wit: Charge them with

the amount of their loan, with interest at six per cent.; also charge insurance paid by the said association, together with interest thereon from the time the same was paid; credit the said stockholder's bond and mortgage with one-half of the premium paid since the execution of their notes and mortgages; allow them average interest on the same at six per cent., and in addition credit them with interest paid, together with the average interest on that at six per cent., and the difference constitutes the amount due on the said bonds and mortgages.

"X. Applying that rule, which is the law of the State of Tennessee, and which is the law applicable to this case, under the terms of the contract, the defendant would be due the said association on May 16th, 1899, a balance of $118.87, which amount, if paid, would leave the defendant in possession of three shares of stock in said corporation, upon which the defendant would have paid $65.42, being the other one-half of the monthly premium paid by him.

"XI. It is further provided that the receiver is further authorized, in the event that the borrowing stockholder pays the balance due on the loan as above set forth, to pay him such dividends as may be declared upon his three shares of stock, which would then belong to the borrowing stockholder; but in the event the said borrowing stockholder desired to surrender his stock, then and in that event he is allowed an additional credit of forty per cent. of the amount paid in on account of his stock as aforesaid, which would reduce the amount to be paid by the defendant to $92.71.

"XII. Plaintiff has demanded payment of the defendant of the said bond and mortgage and has offered the option of settlement hereinabove set forth, and the defendant refused and still refuses to pay the same. That there is, therefore, due under the laws of the State of Tennessee, on account of the said bond and mortgage, the sum of $118.87, with interest thereon from May 16th, 1899, at six per cent. That the terms and conditions of the said bond and mortgage are broken, and the plaintiff is entitled to an order for the sale

of the said property and an application of the proceeds to the satisfaction of the debt hereinabove set forth, and the costs and expenses of this action, including $25 as attorney's fees, which is provided in said mortgage.

"Wherefore, plaintiff demands judgment against the defendant: 1. For the sum of $118.87, being the debt and interest thereon due by the defendant to the plaintiff as receiver, together with $25 as attorney's fee. 2. For an order for the sale of the said land and the application of the proceeds to the payment of said debt and expenses and costs of this action. 3. For such other and further relief as the facts herein alleged may entitle the plaintiff to."

*Exhibit A.*—"Book 2, page 63. Loan No. 1116. Certificate No. 9268. Shares 3. Series N. 21. Knoxville, Tenn., May 16, 1899. Mr. Samuel C. Lewis, Greenville, S. C., in account with the Southern Building and Loan Association.

| 1891. | | Dr. | Cr. |
|---|---|---|---|
| Aug. 17. To loan, cash ...............$150 00 | | | |
| 68 months interest at 75c.. | 51 00 | | |
| insurance pd by association | ——— | | |
| interest on same......... | ——— | | |
| By premium paid............ | | $47 42 | |
| average interest on same.. | | 7 56 | |
| interest paid ............ | | 36 35 | |
| average interest on same... | | 5 94 | |
| amount due April 16, 1897 | | 103 73 | |
| To amount due April 16, 1897. | 103 73 | | |
| interest on same to May 16, 1899 ............. | 12 96 | | |
| insurance prem. paid, $1.00 and $1.00, 1899........ | 2 00 | | |
| interest on same to May 16, 1899 ............. | 18 | | |
| By cash since April 16, 1897.. | ——— | | |
| interest on same.......... | ——— | | |
| amount due May 16, 1899.. | 118 87 | | |

Under this settlement dividends will be paid on $65.42."

The answer admits the allegations in 1, 2, 3 and 4 to be true, except so far as the allegations in paragraph 2, that there was any provision for the payment of his debt other than the express stipulation that defendant should mature three shares of stock, and this defendant denies. Paragraphs 5 and 6 are denied. He pleads want of information to form a belief as to paragraph 7, except that he admits that a demand for money has been made by persons styling themselves as receivers. He denies information or knowledge sufficient to form a belief as to paragraphs 8, 9, 10 and 11, except that defendant denies any indebtedness to plaintiff. As to paragraph 12, he admits the demand by plaintiff of the sum there set forth, but he denies all other allegations of the paragraph. For a second defense, defendant alleges that the Southern Building and Loan Association began to do business in this State prior to September, 1890, at which date defendant became a member of said association, having five shares, which were subsequently reduced to three. That a branch of said association was formed in the city of Greenville, S. C., prior to September, 1890, with the usual officers, and that defendant's contract was made with certain of their officers, and made all payments to said treasurer. That on the 16th July, 1891, the defendant borrowed the $150 in question of said association at six per cent. annual interest, and secured the same by assigning his three shares of stock to said association and by executing the mortgage in question. That about 15th April, 1897, said association became insolvent, and receivers were appointed to wind up its business affairs. That up to 15th April, 1897, defendant had paid to the treasurer the sum of $172.75, but of this amount $18.01 was returned to the defendant by the treasurer of the branch association, so that the sum of $154.74 is what the association admits he has paid. That about June, 1897, the plaintiff, alleging himself with John W. Conner, receivers, sent an account to defendant, by which it appeared that defendant's indebtedness was $94.66, and demanded

that such sum be paid. That the defendant has paid more
than the principal sum of said loan, but his payments have
been illegally and usuriously applied. That the note and
mortgage were illegal and usurious in their terms, in that a
higher rate than the legal rate of interest was agreed to be
paid, was demanded, was received and is now charged.
That the note and mortgage were executed in this State and
were to be performed here. And that defendant has fully
paid his debt to the plaintiff association, and he pleads the
benefit of sec. 1390 of the Revised Statutes of South Caro-
lina in bar of plaintiff's right to recover any interest on said
debt. The third defense need not be stated, as will herein-
after be explained.

With the answer defendant in writing made his offer to
allow plaintiff judgment for $36.19. This statement is
added to the answer:

| "Samuel C. Lewis. | Dr. | Cr. |
|---|---|---|
| Borrowed July 15th, 1891.............$150 00 | | |
| Interest to July 18th, 1899........... 72 07 | | |
| Paid in to date...................... | | $151 72 |
| Average interest .................... | | 36 41 |
| Insurance and interest thereon........ 2 25 | | |
| Balance due .................... | | 36 19 |
| | $224 32 | $224 32 |
| Balance forward ................... $36 19." | | |

By an order of Court, all the issues of law and fact were
referred to D. P. Verner, Esq., as master, before whom both
oral and documentary testimony was offered. The master
in a very carefully considered report, in effect, found that the
contract sued upon was made to be performed under the
laws of the State of Tennessee, and that by the laws of that
Commonwealth the contract was not usurious. He found
that the plaintiff was, therefore, entitled to a judgment in
foreclosure of mortgage in and for the sum of $126.30, with
interest thereon from June 30th, 1900, at seven per cent. per

annum, as against the defendant, S. C. Lewis, and in the
case of the defendant, J. T. Dagnall, for the sum of $183.86,
with interest thereon from 30th June, 1900; but against the
defendant, W. N. Brissey, he found that owing to the loss
or misplacement of the deposition in his case, he could not
determine the amount he had paid to the plaintiff associa-
tion, and, therefore, the consideration of his indebtedness is
left open for future adjudication, but that in all other re-
spects his decision should bind said Brissey. To this report
the defendants duly excepted on six grounds, which need not
be now stated, as the text of the same will be hereinafter pro-
duced.

The causes came on to be heard before his Honor, Judge
Buchanan, and all the exceptions were by his judgment
simply overruled and the report of the master confirmed in
every particular. To this judgment the defendants ex-
cepted, and as grounds of appeal presented the same excep-
tions which they had presented to the report of the master,
as follows:

"1. The master erred in finding that the contract in ques-
tion was a Tennessee contract, when it was in all respects
executed, to be performéd, and governed by the laws of this
State.

"2. The master erred in finding that the contract was not
usurious, when it appeared that a higher rate of interest was
charged and taken than that allowed by the laws of South
Carolina, or by the laws of Tennessee.

"3. The master erred in finding that all payments made
by the defendant were not entitled to be credited on the note
and mortgage so as to extinguish the same, when he should
have held that the defendant was a borrower and entitled to
credits on his debt for all sums paid by him, and has fully
paid the amount due on his debt to plaintiff.

"4. That the master erred in holding that the decision of
the Hargo case was sufficient proof of the laws of Tennes-
see governing contracts of this character, because the ques-

tion of usury was not raised in the Hargo case by the pleadings.

"5. That the master erred in reopening the case and allowing plaintiff to put in additional proof long after the argument had been made and the defendant had fully disclosed his defense.

"6. That the master erred in finding the contract not usurious under the laws of Tennessee, because the contract was clearly such under the laws of this State, and there was not sufficient proof offered at any stage of the reference which showed that the laws of Tennessee are different from our laws, and specifically relieve such contracts from the taint of usury."

We omitted to state in our resume of the contents of the master's report that the master recommended that the plaintiff's attorneys should have taxed against the defendant the sum of $25 as the fee agreed to be paid in the event a suit was necessary to foreclose defendant's mortgage. In giving a statement of the contents of the answer I did not mention the *third* defense set up therein. The defendant alleged that there was a defect in the parties, in that Jno. W. Conner was omitted as a coreceiver with the plaintiff, Carpenter. The proofs showed that both Carpenter and Conner were originally named by the Chancellor of the Court of Tennessee as receivers of the Southern Building and Loan Association, but that Conner resigned such position, and his resignation was accepted by the Court of Tennessee, and by special order the entire power and responsibility as receiver was confided to the plaintiff, Carpenter. As is admitted by the defendant, in his argument on appeal, all the questions presented may be stated to be "(A) Are the facts in this case sufficient to make this a Tennessee contract; (B) If it be a contract, a Tennessee contract, do the laws of Tennessee relieve it from being adjudged usurious?"

A careful consideration of the testimony, and most especially the contract itself, as is evidenced by the agreement or note of the defendant and the deed of trust, or mortgage,

3—60

executed by him, have convinced me that the master and the Circuit Judge are right in holding the contract to be one made with reference to the laws of the State of Tennessee. In reaching this conclusion, I am not governed by the fact that the obligation, or note, of the defendant is made payable at the home office in the city of Knoxville, in the State of Tennessee, nor by the fact that it is expressly stipulated in the by-laws of the association that any payment of debt, interest or dues as made by a borrowing stockholder to the treasurer of the branch office of the association established in the city of Greenville, S. C., for under sec. 4, of art. X., of the by-laws of the association, it is provided: "Members may, if they so desire, make monthly payments to the local treasurer (meaning thereby the treasurer named for the branch); but such local treasurer shall be deemed to be the agent of the members and not of the association." These or similar expressions were commented on in the case of *Meares, as receiver of Building and Loan Association,* v. *Finlayson,* 55 S. C., 123; this Court set out a quotation from the Supreme Court of North Carolina, in its case of *Rowland* v. *Old Dominion Building and Loan Association,* 18 S. E. Reporter, 965, wherein a sharp criticism was made of the position that these words "home office," "local treasurer of branch office," necessarily made the contract a Virginia contract, but this Court, in *Meares* v. *Building and Loan Association, supra,* was careful to say of the Rowland case, *supra,* "Of course, I do not cite this case as *authority;* for, according to my view, it is not authority here." I do hold, however, that it was in the power of this Tennessee building and loan association on the one part and of S. C. Lewis on the other part, to make a contract wherein by express stipulation such contract, whose nature, obligation and construction should be made and determined under the laws of Tennessee; and, further, I hold that this building and loan association of the one part and S. C. Lewis of the other part, when the latter in his note declared, "It is further understood that this note is made with

reference to and under the laws of said State of Tennessee * * *" and in his mortgage declared, "It is further understood and agreed by and between all the parties hereto that this deed as well as the note hereinbefore mentioned is a Tennessee contract and is, and shall be in all respects, governed by the said State of Tennessee," made a contract governed by laws of Tennessee. So each exception that questions this finding is overruled.

. *Second.* If it is a Tennessee contract, is it usurious under the laws of that commonwealth? The master and Circuit Judge hold that the contract is not usurious under the laws of Tennessee. I have given this branch of appeal an unusually full consideration. After much reflection I cannot hold otherwise than that under the laws of that State, this contract is usurious, and I will now, as briefly as I can to be intelligible, give my reasons for this conclusion. Mr. Lewis became a stockholder of this Tennessee building and loan association prior to September, 1890. On the 15th day of July, 1891, he borrowed the sum of $150, stipulating to pay six per cent. interest thereon. By the note he agreed to pay $300, with interest on $150 at six per cent., payable monthly, and it was made payable at the expiration of nine years from its date. But this was not all, for in his application for the loan in question, he expressly declared: "I, Samuel C. Lewis, have five (afterwards reduced to three) shares on which I desire a loan of $150 cash, and I offer a *premium* of $150, and propose to secure said loan and *premium* by my bond and mortgage upon the following real estate * * *" Nor was this all, for he assigned the association his three shares of its stock, and upon this he paid every month the assessment thereupon. All these facts are made manifest in the exhibit A, filed with plaintiff's complaint. It must be remembered this is a Tennessee contract and is to be tested by its laws. When it comes to the question of usury, under such laws we are referred by the plaintiff's attorney in his proofs and in his argument to certain decisions as laying down the law of usury so far as

building and loan associations are concerned. One of these decisions is *McCauley* v. *Workingmen's Building and Loan Association,* 97 Tenn., 421, which holds that loans made to members as borrowers were unlawful and usurious, under the statutes of our (Tennessee) State, when the premium was fixed upon which loans could be made, and the money was not loaned under free and competitive bidding, as required by the statutes. In *Post* v. *Mechanics Building and Loan Association,* 97 Tenn., 408, it is held, after citing and quoting from the case of *McCauley* v. *Workingmen's B. & L. Association,* "it is not necessary to go further in this case." The *Post case* holds such contracts are usurious if the *premium* is more than lawful interest. Now in this case, S. C. Lewis applies for a loan under a fixed premium. His words are: "I offer a *premium* of $150, and propose to secure such loan and *premium* by my bond and mortgage." In his bond, or note, he does secure this *premium* of $150, and in his mortgage he does likewise secure this *premium*. In the Tennessee case, the Court refers to the effort of a building and loan association to obviate the laws of that State against fixed premiums by holding that bids might be made between 30 and 29 7-8—the Court brushes aside this as trifling with law. What are the provisions of the charter and by-laws in the case of Carpenter, as receiver, *v.* Lewis? In the charter it is provided: "By no implication or construction shall the corporation be deemed to possess any powers except those thereby expressly given or necessarily implied from the nature of the business for which the charter is given; and by no inference whatever shall said corporation possess the power to discount notes or bills * * *" "The funds of the association may be loaned out to the stockholders * * *" "The board of directors shall hold stated meetings at which the money in the treasury, if over $200, shall be offered for loan in open meeting at a rate not in conflict with the laws of the State; *and the stockholder who shall bid the highest premium* for the preference or priority shall be entitled to receive a loan of $200 for each share held

by such stockholder: *provided,* that a stockholder may borrow such fractional part of $200 as the by-laws may provide * * *" Here again the charter provides: "The premium bid by the borrowing stockholders for the preference or priority of loan *shall be paid before the loan is consummated,* not as a part of the loan, not as interest, but as a means of determining which one of the stockholders shall receive the loan, whenever there are a number of stockholders who may simultaneously desire to affect a loan." Now as to the provisions of the by-laws: "Article IX.: *Loans.*—Sec. 1. The funds of said corporation, which shall belong to the loan fund, shall be loaned to the member offering to pay the highest premium therefor, in addition to the stipulated six per cent. per annum, upon such terms and security as the board of directors may from time to time approve: *provided,* that the rate of interest shall be six per cent. per annum. Payments of interest and premiums shall be made either in advance at the time the loan is made or monthly, as the directors may deem best. All other payments shall be made monthly. Loans shall be made at the regular monthly meeting of the board of directors, on the second Thursday in each month, when there are sufficient funds therefor, and as much oftener as may appear advisable to such board. Sec. 2. A member desiring a loan shall file written application therefor with the secretary, accompanied by a sealed bid, stating the amount of premium per share, in addition to six per cent. interest, which the applicant is willing to pay for such a loan. But no loan shall be granted to a member until three months from the date of his certificate of stock, unless the board of directors shall, for good reasons, determine to the contrary. Sec. 3. Each bid shall be numbered in the order of its receipt by the secretary; and when two or more are made at the same premium, they shall take precedence in the order of their receipt, other things being equal: *provided,* that where the same premium is offered by two or more members, those having the best security shall be given the preference. Sec. 4. Bids shall be opened on the second

Thursday of each month, and at such other times as the
board of directors may deem advisable. Any member, or
his agent or attorney, may be present when they are opened.
All bids shall be kept on file, and after being opened shall be
subject to the inspection of any person interested." Now
by contrasting the charter with the by-laws, it will be seen
that the association, in disregard of the charter, by its by-
laws has provided that the premium bid may be paid *"either
in advance* at the time the loan is made, *or monthly,* as to the
directors may seem best." And this, too, in the face of the
declaration of the charter that such association shall not
alter the provisions of its charter. It is obvious that the
object of the legislature of Tennessee was to give a pref-
erence to the stockholders in the matter of loans; but to pro-
tect them from the too great power of money lenders, it was
deemed best to provide that loans to the shareholders should
be made on the plan of competitive bidding, requiring that
the premium should be paid in advance of the loan. By the
complaint and under the proofs here it nowhere is made to
appear that these requirements were observed in the loan
made to the defendant. Indeed, in the very note itself, the
premium is added to the loan to be payable in nine years.
This building and loan association knew this difficulty.
Hence in April, 1893, an amendment to the charter was ob-
tained as follows: "The board of directors shall have the
power to loan the funds of the association to its stockholders,
either in open meeting or by action on written application
and bids, at a rate of interest not in conflict with the laws of
the State; and the premium may be payable in instalments,
or otherwise. The board of directors shall have the right,
for sufficient reasons, to reject any bid or application, but
such action shall not be arbitrary." So that I must conclude
that this contract, although a contract under the laws of
Tennessee, is obnoxious to the charge of usury under the
laws of the State of Tennessee.

The question is now presented as to the practice which
shall prevail in appyling the remedy in the matter of usury.

The very elaborate opinion of Mr. Chief Justice McIver, in *Mears, as receiver,* v. *Finlayson,* 55 S. C., 118, determines that it is the *lex fori* which must prevail in this matter. Indeed, the learned Chief Justice there shows that such has been the law for a long time in this State as well as elsewhere. His opinion amongst other things holds: "If, then, the contract which the appellants are seeking to enforce is to be regarded as usurious, either under the laws of North Carolina or South Carolina, the next question is whether the plaintiffs when they invoke the aid of the Courts of this State to enforce the contract, are not bound to the remedy provided by the laws of this State. It seems by the law of North Carolina the penality for charging usury is simply the forfeiture of so much of the interest as is in excess of the rate allowed by the laws of that State, while here the penalty is a forfeiture of *all* interest as well as costs; and our statute not only provides that the lender of the money shall not be allowed to recover in any Court of this State any portion of the interest unlawfully charged, but expressly declares that 'The principal sum, amount or value so lent or advanced without any interest, shall be deemed and taken by the Courts of this State the true legal debt or measure of damages, to all intents and purposes whatsoever, so to be recovered without cost.' Sec. 1390, Revised Statutes. In the face of these explicit provisions, I do not see by what authority the Courts of this State, when called upon to enforce a usurious contract for the loan of money, can render any other judgment except for the principal sum loaned, after deducting all payments made thereon, without any interest or costs. It is contended, however, that this is a North Carolina contract, and must, upon the principal of comity, be governed by the laws of North Carolina, by which the lender of money upon a usurious contract is entitled to recover the amount loaned, with lawful interest. Assuming, for the present, that this is a North Carolina contract, there is no doubt that the rule of comity is well settled, that when a contract is made in one State, or is to be per-

formed in such State, its validity and construction is to be determined by the laws of that State. But to this rule there is an exception as well settled as the rule itself, which is thus stated by that learned jurist, Chanceller Kent, in his Commentaries, 'That no people are bound or ought to enforce or hold valid in their Courts of justice any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or *violates a public law.*' See Kent Com., 458, recognized and followed in *Thorton* v. *Dean,* 19 S. C., at page 587; *Gist* v. *Telegraph Co.,* 45 S. C., at page 369. But as is said by Mr. Justice McGowan, in delivering the opinion of the Court in *Thorton* v. *Dean, supra:* 'As to all matters relating to the remedy, each State insists upon enforcing its own law;' and as is said in 3 Am. & Eng. of Law, 1st ed., at page 561 : 'The law to be applied to the remedy is the *lex fori,* at the time such remedy is sought;' and again on the same page, 'Where contracts are made in one place and to be performed in another, they are to be governed by the law of the place of performance, as to validity, nature, obligation and interpretation. But the remedy upon it will be governed by the law of the State in which a remedy is sought.' " The learned Chief Justice McIver proceeds to further fortify his position by citing 3 Am. & Eng. of Law, at page 578 (1st ed.) : *Pegram* v. *Williams,* 4 Rich., at pages 224-225; 1 Bos. & Pul., 142; *De La Vega* v. *Vienna I. B. & Ad.,* 284; *LePrince* v. *Guillemet,* 1 Rich. Eq., pp. 211-212, and many other cases. The *lex fori* governs the remedy. *Buist* v. *Bryan,* 44 S. C., 121, has laid down the principles which are to govern in applying the remedy in our State in the settlement of claims against a defaulting stockholder as a debtor of an insolvent building and loan association. In the offer by defendant for judgment against him, S. C. Lewis, we understand these principles have been applied.

So far, therefore, as defendant, S. C. Lewis, is concerned, the judgment of the Circuit Court must be so modified as to give plaintiff a judgment against him for $36.19-100, with

interest thereon at seven per cent., from 30th June, 1900, and $25 as counsel fee for plaintiff, as per agreement in his mortgage—the finding of the master not having been excepted· to in this particular.   So far as the cases against Dagnall and Brissey are concerned, they must ·be recommitted to the master by the Circuit Court to apply the principles herein established, to ascertain and report the true amount for which plaintiff will be entitled to judgment against them, respectively.

The judgment of this Court is, that the judgment of the Circuit Court be modified as herein directed.