SOUTHERN BUILDING & LOAN ASS'N OF KNOX COUNTY, TENN., v. JOHNSON.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1901.)

No. 401.

BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—SETTLEMENTS WITH BORROWING STOCKHOLDERS.

A building and loan association organized under the laws of Tennessee, and whose contracts were expressly made subject to such laws, made loans to its stockholders to an amount equal to only one-half the par value of their stock; the borrower being required to mature one half his stock to pay the principal of the loan, and the other half for the benefit of the association, as a premium on such loan. The state statute authorized the charging of premiums only as fixed by competitive bidding, and, as construed by the supreme court of the state, rendered premiums otherwise fixed usurious and illegal. *Held* that, on the winding up of such association in insolvency, in settlements between the association and borrowing stockholders the latter were entitled to credit on their loans for all dues paid on such premium stock, whether paid before or after the loan was made, since on the making of the loan they were required, in effect, to surrender such stock to the association, advanced towards maturity by the dues previously paid, as a usurious consideration for the loan.

Appeal from the Circuit Court of the United States for the Western District of Virginia.

This is an ancillary bill filed in the circuit court for the Western district of Virginia to wind up the affairs in that state of an insolvent building and loan association incorporated in Tennessee. The court of primary jurisdic-

tion was the chancery court of Knox county, Tenn., in which receivers had been appointed on April 16, 1897, to wind up said association on a general creditors' bill, which alleged that the association's assets were insufficient to pay all its stockholders in full, that under its by-laws many of the withdrawing stockholders were entitled to receive all they had paid in, with 10 per cent. interest or profits per annum thereon, that notices of withdrawal were on file for $300,000 of stock, and that to permit such withdrawals to be paid upon the terms mentioned would leave the association without sufficient assets to meet the claims of those stockholders who had not filed notices of withdrawal. There were a number of borrowing stockholders of this association in the Western district of Virginia, and in this ancillary cause the court ordered a reference to a special master, and he reported to the court the amount due by each of these borrowing stockholders. To the special master's report ascertaining these amounts the building association filed five exceptions. Of these the court overruled the first and second, and sustained the third, fourth, and fifth. From the decree of the court overruling the first and second exceptions the building association has taken this appeal.

The rule of settlement with borrowing stockholders adopted by the special master is stated by him as follows: He has charged the borrower with the money borrowed, and with interest thereon from the time when received by him, and has credited him with all payments made on "premium stock," as well prior to the loan as after, with interest thereon, and with one-half of all fines paid; the statement of the account being made upon the principle of partial payments, the payments being applied at the dates when made. No credit is given to the borrower on his loan for the payments made by him on "borrowing stock," since the value of such stock could not be ascertained at that time. On this stock the borrower will be entitled to dividends, when ascertained, in proportion to the amount paid thereon by him. The exceptions of the defendant association to the special master's report were, in substance, as follows: (1) Because the special master credited each borrower with all the payments on premium stock made prior to the loan, and with interest thereon. That this was error, for the reason that prior to the loan there was no premium stock, but all was investment stock, and the payments on all said stock should be treated as payments on investment stock. (2) Because the special master failed to include in the amount of stock payments made by the borrower on which he was entitled to merely a dividend all the payments made by the borrower on all his stock prior to the date of the loan.

The special master, in his report, thus states his understanding of the general scheme of the association:

"A person wishing to borrow $1,000 was required to subscribe for 20 shares of the stock of the association. Ten shares of this the borrower was expected to mature to pay or cancel the loan, by paying 60 cents per share per month, and he was to pay as interest on the loan $5 per month; and as a premium or bonus for the privilege of the loan he was required to mature the other ten shares for the benefit of the association, by paying 60 cents per share thereon per month until all 20 shares reached the par value of $100. When thus matured the borrower's loan of $1,000 and interest was considered paid, and all the stock canceled or redeemed; ten shares having been matured as premium for the benefit of the association. Hence we designate one half as 'borrowing stock,' and the other half as 'premium stock,' although in the pass books of the borrower payments on all the stock were placed under the head of 'Dues.' Thus the payments on a loan of $1,000 per month would be as follows:

| | |
|---|---|
| Dues | $ 6 00 |
| Interest | 5 00 |
| Premium | 6 00 |
| | $17 00 |

"A member taking a loan was required to execute his bond to the association for double the amount borrowed, and secure the same by a deed of

trust upon real estate. These bonds * * * were payable to the Southern Building and Loan Association on demand at its home office at Knoxville, Tennessee, * * * and both bond and deed of trust contained a clause stating that the loan was 'made with reference to the laws of the state of Tennessee,' and that the said 'bond is a Tennessee contract, and in all respects subject to and governed by the laws of said state.' By the bond and the deed of trust the borrower agreed to pay the monthly interest on the loan at six per cent., and the monthly dues on all the shares of stock until the stock should become fully paid in and of the par value of $100 per share, and then to surrender the stock to the association."

The master reported as part of his findings that the loans in question were not made upon competitive bids on the part of the borrowers in open meetings of the board of directors, as required by the statute law of Tennessee, but a uniform premium was fixed and regulated by the by-laws, and exacted from the borrower, as a condition of obtaining his loan, by the scheme which required the borrower to mature for the benefit of the association half of the stock subscribed for.

The following is the substance of the opinion of the court below (PAUL, District Judge):

"The Southern Building & Loan Association excepts to the report of the special commissioner filed in this cause on September 29, 1899. The first exception thereto is as follows: '(1) Because on page 7 of said report, in stating the basis on which he has computed the amounts due by the borrowers, and on pages 46 to 964 of said report, the special commissioner shows that he has credited each borrower with "all payments made on premium stock prior to the loan, with interest thereon." This was error, because there were no premium payments until after the date of the loans, and the payments made prior to the date of the loans, one-half of which are treated as premium payments by the special commissioner, were really payments of investment stock, and should have been so treated by the special commissioner. The correct result would be reached by adding to the amount found by the commissioner to be due by each borrower the amount of the so-called premium payments in each case up to the date of the loan, with interest from that date up to January 1, 1899; and your exceptor files herewith, as Schedule A, and as a part of these exceptions, corrected calculations showing the true amount due by each borrower, on the basis of this exception.' The gist of the foregoing exception is that the commissioner erred in allowing credits for payments made by the borrower on premium stock prior to the date of the loan, with interest thereon; 'that such payments were really payments on investment stock, and should have been so treated by the commissioner.' Should this exception be sustained? is the question to be determined. The exception treats all stock held by the borrower as investment stock up to the time of granting the loan, and that there was no premium stock or premium payments until after the date of the loan, whereas the commissioner in his report follows the rule which maintains the distinction between the stockholder as such and the stockholder as a borrower, which charges him, as a borrower, with the money he actually received, with interest from its receipt, and credits him with all payments of premium and interest as of the date when paid, and allows him no credit for payment of dues upon his stock; that is, dues upon one half of his stock, designated as loan or borrowing stock. As to these payments he is treated as a nonborrower, and the fund remaining after all prior liabilities are paid is distributed pro rata among stockholders upon the basis of the amounts paid them, respectively, as dues, whether borrowers or no. The exception by the association treats the premium for the loan as consisting merely of the monthly payments of 60 cents per share on one-half of the stock, made after the loan, as the premium on the loan, whereas the commissioner finds as a fact that the premium charged was one-half of the stock held by the borrower, which he was required to mature or bring to par for the benefit of the association; the same being matured, like the other half or loan stock, by monthly payments thereon at 60 cents per share. One-half of the stock held by the borrower brought to par being the pre-

mium required and charged by the association, it can make no difference whether the premium payments were made before or after the loan. All of them were made by the borrowers for the purpose of maturing the premium stock,—the same stock which the association required to be matured as a premium, for the loan, and for its benefit. Payments made on such stock prior to the loan were nothing more than advance payments on the premium charged,—just advanced the premium stock that much towards maturity before the loan was made, and shortened the time by that much for bringing the stock to par. The commissioner finds that the loans reported in this cause were illegal and usurious because the premium charged was greatly in excess of that authorized by the statute of Tennessee (sections 1751, 1752, Mill. & V. Code), which premium was not to be at a rate in conflict with the law of the state, which is six per cent. interest; 'that the uniform premium charged by the association was fifty (50) per cent. per share of stock, it requiring the borrower to mature for the benefit of the association half of the stock subscribed for'; and this finding of fact by the commissioner is not excepted to by the association; hence, the premium charged being illegal and usurious, it was right and proper to credit the borrower with everything paid on the premium stock, whether before or after the loan, including one-half of the fines paid by the borrower. In no other way would the contract or loan be entirely purged of the usury. To allow credit only for premium payments made after the loan would give but partial relief from the illegal and usurious premium charge; and, had the commissioner found and reported in accordance with the exemption of the association, the report would be liable to exception on the part of the borrowers, as only giving partial relief from the illegal and usurious premium. It would allow the association to receive and keep money paid by the borrower, for which he would receive nothing in return, and to that extent permit the association to reap the benefits of its illegal gains. If prior to the insolvency of the association any borrower had paid his loan in full, still retaining his loan stock, and had received no credit for the shares upon which he borrowed, as he might have done, he could now claim and recover the entire amount paid as such premium, according to the case of Douglass v. Kavanaugh, 33 C. C. A. 107, 90 Fed. 373–377. There Adkins and wife borrowed and paid off their loan without receiving any credit for the withdrawal of the shares upon which they borrowed, but retained or held their stock; that is, their loan or borrowing stock. They were allowed to present their claims as creditors to the extent of the premium actually paid by them. They had not participated in any unlawful gains by receiving credit on their loans for the withdrawal value of their loan stock, and were for that reason allowed to present their claims as creditors for the amount of the premium actually paid by them, and this was right. To have held otherwise would have been to allow the association to have and retain the benefit of the illegal and usurious premium paid by Adkins and wife. So, here, to sustain the said exception of the association would be to allow the association the benefit of the illegal premiums to the extent of the advance payments complained of, while to apply the said payments, with interest thereon, as a credit on the loans, as was done by the commissioner, gives the entire benefit to the borrower who made them, takes nothing from the association to which it is lawfully entitled, purges the contract entirely and completely of the usury, and cancels or eliminates the premium stock from the case.

"Counsel for the association, in their brief, state that when the application of the borrower 'was accepted he thereafter made monthly payments upon one-half his stock, which was set apart and designated as premium stock.' This is in accord with the finding of the commissioner that the borrower was required to mature half of the stock subscribed for the benefit of the association; that the premium charged the borrower was (50) fifty per cent. per share of the stock subscribed for. Counsel in their exception do not show or pretend that the payments made before the bid or loan were set apart or credited in any way to the borrower, either on his loan stock or the loan itself, but merely one-half his stock was set apart and designated as 'premium stock.' It would seem from this statement of the matter that the payments before the loan went to mature the premium

stock,—as much so as these made after the loan,—and that they have been properly credited on the loans as part of the illegal and usurious premium charged. Upon what principles of justice could the association require the borrower to mature half the stock subscribed for by him as a premium for his loan, and then deny him credit for part of the payments made by him on such stock, and which would otherwise go towards its maturity? The contention of the counsel seems to lose sight of or ignore the illegality and usury in the entire premium charged, but they seem to think that it attaches only to payments after the loan. The premium charged was an entire thing. Maturity of half the stock for the benefit of the association, and the payments thereon, cannot be made part legal and part illegal on the ground assigned in the exception. Counsel claim that they are sustained in their position by the Post Case, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201, the Richardson Case, 101 Tenn. 178, 46 S. W. 452, and the Kavanaugh Case. We do not so understand the cases. In none of them was the question made in the form here presented. In the Richardson Case the premium paid was $18.90, including interest, and it does not appear whether it was made before or after the loan, or whether part before and part after,—that it was 'cash dues paid on the $450 premium stock which was to be matured for the company.' For this amount the lower court allowed the borrower credit, and its action was approved and confirmed. The borrower insisted that she should have the value of her stock upon her loan,—referring, as we understand the case, to the value of loan stock, which the court refused to allow her. Nor is the question of legality of the premium charged in that case brought in question. The syllabus of that case seems to be misleading and wrong. In the Post Case it does not appear that the borrower was required to mature half the stock for the benefit of the association as premium for the loan. There was a fixed premium of 30%, and it does not appear when or how it was paid. It may have been paid in advance, or deducted from the loan. If the plan of the association involved there was the same as in the McCauley Case, 97 Tenn. 421, 37 S. W. 212, 35 L. R. A. 244, 56 Am. St. Rep. 813. the premium was deducted from the loan. The dues upon the stock for which credit was asked were dues upon the borrowing or loan stock, so far as anything to the contrary appears. The premium was fixed at 30%, and the loan was evidenced by notes payable in six years after date, and the principal and interest were secured by mortgage upon real estate. The mortgages further secured the dues and fines prescribed by the by-laws. The notes were enforceable at maturity, irrespective of the maturity of the stock hypothecated to secure the loans. There is nothing said about premium stock. In the McCauley Case the borrower borrowed $1,600, for which she gave her note, bearing interest. She received upon the note $1,120, and the remaining $480 was claimed by the association as premium or bonus required for the loan. The borrower filed her bill to recover $340.72, claimed to be usury exacted on the loan by the building and saving association. The court below gave her a decree for the amount claimed, and the supreme court affirmed such decree. The loan was usurious, as having been made at a uniform premium of 30%, without free and competitive biddings; and the court said: 'Usurious loans of a building and loan association will be set aside at any time, and before the scheme has been matured, at the suit of the borrower; he being required in such case to pay back the money borrowed, with legal interest, after crediting payments already made with proper interest.' In the McCauley Case the association was solvent, as appears from the case, and the court purged the loan of the usury by allowing the borrower credit for the entire amount of the illegal premium paid by her, with interest thereon. There is nothing in the case of Douglass v. Kavanaugh which goes to sustain the exception of the association. That case says that where illegal premiums were exacted, which render the loans usurious, the borrowers should be charged with the sum actually received, and credited with payments made of premiums and interest as of the date when paid, and applying the sums paid as dues on the stock. In the Foster Case (C. C.) 94 Fed. 592, there is no such distinction made as raised in the exception, but 'payment of dues and fines on the premium stock are credited on the loan, and the stock canceled, while the aggregate dues paid on the

remainder or loan stock would constitute the amount of paid-up stock on which he would be entitled to dividends at the same rate paid on other paid-up stock.' Commissioner Gray's report states the account with the borrowers exactly in accord with the rule in the Foster Case, where the court said: 'Evidently $2,000 of this stock covered the $2,000 borrowed, and may be, for convenience, called "loan stock." ' The other $2,000 in stock for convenience may be called "premium stock,"—the borrower there holding 40 shares, of $100 each, or $4,000 in stock.

"This exception is overruled."

Jerome Templeton (Fulkerson, Page & Hurt, on the brief), for appellant.

I. H. Larew, for appellee.

Before SIMONTON, Circuit Judge, and MORRIS and BOYD, District Judges.

MORRIS, District Judge. The question raised by the appeal in this case is a narrow one. The contract is a Tennessee contract, and is to be construed by the law of Tennessee. It is settled by the supreme court of Tennessee that the premium exacted, not being by competitive bidding, was illegal, and must be credited on the loan. McCauley v. Association, 97 Tenn. 421, 37 S. W. 212, 35 L. R. A. 244, 56 Am. St. Rep. 813; Post v. Association, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201. This premium was exacted by the following device: The intending borrower was required to subscribe for twice as many shares as at their matured value would equal the loan. He was required to give security that he would mature all the shares for the benefit of the association, and in payment of the loan. This was illegal and usurious under the laws of Tennessee. By the rule of settlement adopted by the special master and approved by the decree of the circuit court, half of the stock was treated as "borrowing stock," and the other half as "premium stock." This was in accordance with the actual transaction, and is not excepted to, and it is admitted to be in conformity with the decisions of the supreme court of Tennessee. It was directly so held by the supreme court of Tennessee in Carpenter v. Richardson, 101 Tenn. 178, 46 S. W. 452. In that case it was shown that altogether a certain sum had been paid in on the premium stock. The chancellor ruled that this should be credited on the loan. On appeal this was urged as error, but the supreme court affirmed the ruling of the chancellor. This rule of settlement was also accepted as the Tennessee rule in Bowman v. Foster & Logan Hardware Co. (C. C.) 94 Fed. 592–599, the circuit court saying, "It will be seen by this rule that all dues paid on premium stock and all interest are credits on the note."

The only matter assigned as error is this: The by-laws provided that no loan should be granted to a member until three months from the date of his certificate, and it frequently happened, before the loan was actually consummated and the money paid, that the borrower had paid in several months dues both on the borrowing stock and the premium stock. The sole question raised by this appeal is whether the dues paid on the premium stock before the date when the money loaned was actually paid over are to be cred-

ñed to the loan, as well as the dues paid afterwards. To obtain the loan the borrower contracted to mature his borrowing stock, and to pay 6 per cent. interest on the loan during the time required to mature it. This was legal, and every payment of dues he had already made and every payment of dues thereafter made on that stock went to his benefit, because it contributed to the maturing of his stock, dating from his first payment. With regard to the "premium stock," every payment he had already made before obtaining the loan and every payment thereafter made went to the benefit of the association, because he, in effect, surrendered the premium stock to the association as a bonus or usurious exaction. He surrendered to the association all he had already paid in and all he agreed thereafter to pay as dues on the premium stock, as the consideration for obtaining the loan on his borrowing stock. As to this stock he ceased to have any beneficial interest. It went to the association as a premium for the use of the money advanced. This was not sanctioned by the Tennessee law, and was usurious and illegal; and in settlement he is entitled, we think, to credit for all those payments from the commencement, because under the scheme they were usurious exactions. Counsel for the association urge that until there was a loan there was no premium stock, and that prior to the loan all was investment stock; but, as is pointed out in the opinion of Judge PAUL, the payments made before the loan, as well as those made afterwards, were paid for the purpose of maturing this premium stock, and these payments advanced the stock towards maturity. The transaction exacted of the borrower that he should surrender all interest in this premium stock to the association, and it was a usurious consideration for the loan. Equity requires that all payments thereon should be credited.

There is no other question raised by this appeal of the Southern Building & Loan Association. None of the borrowing stockholders have appealed.

Finding no error in the decree, it is affirmed.