547

## Cameron, Secretary of Banking, v. Riggle.

*George F. Taylor, Jr., F. G. Moorhead* and *Alter, Wright & Barron,* for plaintiff.

*Robert W. Darragh,* for defendant.

McConnel, J., Dec. 1, 1930.—On July 19, 1930, Peter G. Cameron, Secretary of Banking, in possession of the Pittsburgh Building and Loan Association, caused a writ of *scire facias* to be issued in the above stated case out of the prothonotary's office of Beaver County upon a mortgage dated July 17, 1924, given by Walter H. Riggle to the Pittsburgh Building and Loan Association, and at the same time filed a statement and affidavit of claim setting forth, among other things, the execution and delivery of a mortgage by Walter

548

H. Riggle to the Pittsburgh Building and Loan Association on July 17, 1924, upon certain property situate in the Borough of Freedom, in the County of Beaver and State of Pennsylvania; that the said mortgage was given as security for the payment of a certain bond conditioned for the payment of $1900 to said association in monthly instalments at the rate of 50 cents per share each and every month thereafter on nineteen shares of the capital stock of said association owned by the said Walter H. Riggle until the whole amount of said debt and interest should be fully paid, together with such premiums as may have been bid or agreed upon in obtaining said loan in the manner and form prescribed in the by-laws of said association, and also pay such fines for default made as may be imposed under said by-laws. Attached to the statement of claim was a copy of said bond marked "Exhibit B." That the above stated mortgage contained a clause which provided for the foreclosure of said mortgage in case of default in payment of any one or more instalments of dues, premiums, interest, etc., for the space of six months; that the said bond and mortgage provided for the payment of an attorney's commission of 5 per cent. for collection; that the defendant had paid the interest and premium due on the aforesaid bond to April 17, 1930, but has made no further payments thereon; that the Pittsburgh Building and Loan Association is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania; that Peter G. Cameron, Secretary of Banking of the Commonwealth of Pennsylvania, had, after hearing, found that the said association was in an unsafe and unsound condition and on April 29, 1930, had taken possession of the business and property of said association; that on May 8, 1930, and at various times thereafter, the defendant had been notified by the plaintiff that the bond above mentioned had been called for payment, inasmuch as the Secretary of Banking was liquidating said association and had found that it was necessary that a fund be created for the protection of certain assets of the association; and it was also averred that the said Pittsburgh Building and Loan Association was, on April 29, 1930, in an insolvent condition and for that reason it had been taken over by the Secretary of Banking in pursuance of the Banking Act of 1923, as amended; that there was due and payable from the defendant the sum of $1900, with interest at 6 per cent. from April 17, 1930, plus an attorney's commission of 5 per cent.

To this statement of claim the defendant, on Aug. 4, 1930, filed an affidavit of defense, in which he admitted all of the material facts set forth in the above mentioned statement of claim, but averred that six months had not elapsed since default had been made by the defendant under the terms of the bond and mortgage given by him to the said association and that the issuance of a scire facias upon said mortgage was premature; that the plaintiff was not entitled to the 5 per cent. attorney's commission for collection because the defendant had not defaulted in the payment of said mortgage; that the first notice given by the Secretary of Banking to the defendant requiring payment of said mortgage to him only claimed a balance due of $933.50, and that the defendant, having received said notification on June 19, 1930, immediately made arrangements to borrow a sum sufficient to pay said $933.50 for the purpose of satisfying the said mortgage in full, and the defendant was only prevented from consummating said loan by a second notice from the plaintiff requiring him to pay the sum of $1900, with interest at 6 per cent. from April 17, 1930; that the defendant had never refused to pay the sum of $933.50 and renewed his offer to pay said amount with interest and costs of satisfaction at any time upon securing satisfaction of said mortgage by the plaintiff; that at the time he borrowed from the Pittsburgh Building and Loan Association the above mentioned sum of $1900, the same was payable in

monthly instalments of $9.50 on account of principal of said debt, $9.50 per month on account of interest on said debt, and a further sum of $3.17 called for as a premium in connection with said loan, although there was no competitive bidding for said loan at the time the same was made; and that, in the opinion of the affiant, he was entitled to a further credit on the loan originally made of the monthly premium paid by him as above set forth; that the claim of plaintiff for all sums in excess of $933.50 was unjust, unlawful and extortionate.

After this affidavit of defense was filed, the plaintiff, on Sept. 19, 1930, issued a rule upon the defendant to show cause why judgment should not be entered against him for want of a sufficient affidavit of defense, for the reason that the affidavit admits that the property of the Pittsburgh Building and Loan Association had been taken possession of and was being liquidated by the Secretary of Banking because the said association was in an insolvent condition; admits the execution by the defendant prior thereto of the bond and mortgage of $1900, and admits that nothing had been paid upon said mortgage except the dues, interest and premiums accruing before April 17, 1930; that all premiums paid by the defendant were premiums earned and the contract between defendant and the Pittsburgh Building and Loan Association was divisible; that the *scire facias* could be issued upon said mortgage immediately upon a default, and the affidavit of defense admits that there is a balance due on said mortgage of $933.50, with interest from April 17, 1930.

On Oct. 6, 1930, the defendant filed a supplemental affidavit of defense, in which he alleged that he was at all times ready and willing to pay the instalments due upon the above mentioned bond and mortgage, and that the appointment of a receiver of said building and loan association was through no default of the defendant; that the stock owned by the defendant in the Pittsburgh Building and Loan Association had never been assigned to said association; withdrew the admission that $933.50 was due the plaintiff, and demanded proof of the exact amount due from the defendant to the plaintiff; that, inasmuch as the defendant was charged a monthly premium of $3.17 for the money loaned to him by the Pittsburgh Building and Loan Association, through the failure of said association and the appointment of a receiver the said association had violated its agreement, and that the defendant was, therefore, entitled to receive a further credit on account of the balance due on said bond and mortgage of the full amount of the premiums paid at the rate of $3.17 per month.

On Oct. 7, 1930, the plaintiff filed an amendment to the rule for judgment for want of a sufficient affidavit of defense, setting forth that no competitive bidding was necessary since the premium fixed on said loan was 2 per centum; that a mortgage given to and held by an insolvent building and loan association may be foreclosed forthwith, and that the affidavit of defense so amended was vague and insufficient in law.

This case was placed upon the trial list for the October Special Term, 1930, and also came up for argument before the court *in banc* on Oct. 7, 1930, and at that time was argued by counsel for both plaintiff and defendant. When the case was reached upon the trial list it was agreed by counsel for both plaintiff and defendant that the trial should be continued, as the case could probably be disposed of upon the motion for judgment for want of a sufficient affidavit of defense.

The case, then, is before us now on the sufficiency of the affidavit of defense. The affidavit as filed admits the giving of the bond and mortgage upon which a *scire facias* had been issued; admits that the defendant has borrowed from

the Pittsburgh Building and Loan Association $1900, which he was to repay in monthly instalments as set forth in the bond and mortgage; that under the terms and conditions of the said bond and mortgage and the by-laws of the building and loan association, the defendant agreed and undertook to pay monthly $9.50 on account of the principal of said debt, $9.50 per month on account of interest, and a further sum of $3.17 called for as a premium in connection with said loan; admits that the defendant paid the dues, interest and premium called for in said bond and mortgage to April 17, 1930; admits that the property and assets of the Pittsburgh Building and Loan Association have been taken over by the Secretary of Banking of the Commonwealth of Pennsylvania because it was in an insolvent condition, and merely claims that the issuance of a *scire facias* by the plaintiff against the defendant was premature and that he is entitled to certain credits on account of his indebtedness of $1900, consisting of the dues and premiums paid by him to April 17, 1930; and denies that the plaintiff is entitled to any attorney's commission of 5 per cent.

In disposing of this matter now, all of the allegations in the statement of claim are to be taken as true, unless they are denied by the affidavit of defense, and all averments of fact set forth in the affidavit of defense are to be taken as true.

In the first place, the defendant contends that the plaintiff has no right to issue a *scire facias* upon the mortgage given by him to the said association until it has been six months in default under the terms and conditions of his mortgage.

In our opinion, this position of the defendant cannot be sustained. While it is true that the mortgage of the building and loan association was to be paid only in instalments and payment of the principal could not be enforced unless the mortgage was in default for six months, it is also the law that whenever a building and loan association becomes insolvent and its affairs must be liquidated by a receiver or by the Secretary of Banking, owing to the necessities of the case, all of the loans made by the building and loan association to its stockholders become immediately payable: Strohen *v.* Franklin Saving Fund and Loan Ass'n, 115 Pa. 273, 279; Leechburg B. & L. Ass'n *v.* Kinter, 233 Pa. 354, 356; Haspel *v.* Moffitt, 32 Pa. Superior Ct. 344, 347. In this respect, therefore, the affidavit of defense is, in our opinion, insufficient.

In the second place, the defendant claims in his affidavit of defense that the plaintiff is not entitled to recover the attorney's commission of 5 per cent.

The bond given by the defendant to said association provided for an attorney's commission of 5 per cent. for collection, and, as we understand it, this provision is inserted in the bond for the purpose of securing to the Pittsburgh Building and Loan Association the reasonable and necessary expenses of collection: Lewis *v.* Germania Savings Bank, 96 Pa. 86, 92. It appears from the statement of claim and is admitted in the affidavit of defense that in June, 1930, the defendant was notified to pay his mortgage to the Secretary of Banking and did not do so; nor did he even tender to the Secretary of Banking the amount which the defendant admitted was due to the plaintiff, and as a result of the defendant's refusal to pay his loan the Secretary of Banking was required to employ counsel, have a *scire facias* issued upon the mortgage and defend in this court the plaintiff's right to recover the indebtedness due from the defendant under the terms and conditions of his mortgage. Five per cent. of the amount of the present mortgage and interest would only be a reasonable compensation to the plaintiff's counsel for the service which they have performed in the present case, and those services were rendered necessary by the neglect of the defendant. In our opinion, so much of the

affidavit of defense as denies the right of the plaintiff to recover a commission of 5 per cent. is also insufficient.

In the third place, the defendant contends that because George F. Taylor, Jr., Special Deputy Secretary of Banking, on June 19, 1930, acting through one of his employees, wrote a letter to the defendant, in which he alleged that the total amount due to the Secretary of Banking from the defendant under his mortgage to the Pittsburgh Building and Loan Association was only $933.50, the plaintiff is bound by this statement of the balance due and cannot recover from the defendant any more than $933.50.

This amount was evidently arrived at by giving the defendant credit for his dues, interest and premiums paid on account of the mortgage, and if a mistake was made by the Special Deputy Secretary of Banking in calculating at that time the amount due upon this mortgage, as the defendant did not at that time pay the mortgage and have it satisfied, we can see no reason why the Secretary of Banking would be estopped by this mistake on the part of his agent. The Secretary of Banking in this proceeding is simply the representative of the creditors of the Pittsburgh Building and Loan Association for the purpose of liquidating its affairs, and he would have no right voluntarily to part with any of the assets of said association except for the purpose of paying a legitimate claim against it or distributing its assets in accordance with the provisions of the laws of this Commonwealth, and if under the law the defendant is not entitled to a credit for the dues and premiums paid by him, the Secretary of Banking could not lawfully allow him such credit.

In the case of Haspel v. McLaughlin-Lyons, 38 Pa. Superior Ct. 334, it was held that after a building and loan association is insolvent the dues paid on account of shares of stock cannot be appropriated to the reduction of the mortgage debt and that on the eve of the insolvency of the corporation the secretary of the building and loan association could not bind the association by a statement made to the borrower that he had applied the value of the borrower's stock to the payment of the mortgage and that the borrower need not make any further payments to the association as his mortgage had been canceled; and if the secretary of a building and loan association cannot, before insolvency, apply the value of a borrower's stock to the payment of the stockholder's mortgage, still less could the Secretary of Banking, after insolvency, so cancel any part of the mortgage of the borrower. If the defendant, at the time he received this notice in June, 1930, from the Secretary of Banking, had paid off his mortgage and had it satisfied, then a different question might have arisen; but as the matter stands now, in our opinion, the plaintiff is not bound nor estopped by the notification sent to the defendant on June 19, 1930, and in this respect the affidavit of defense is insufficient.

In the fourth place, the defendant takes the position that he is entitled to credit on account of his mortgage for the dues paid by him on account of his stock in the building and loan association.

It was held in the case of York Trust, etc., Co. v. Gallatin, 186 Pa. 150, that where, by a specific agreement between the building and loan association and the borrower at the inception of the loan, all payments made by the borrower on account of his stock in the building and loan association should be forthwith applied to the reduction of his indebtedness, this agreement is binding upon both parties, and in case of the insolvency afterwards of the building and loan association, the borrower is entitled to have the value of his stock credited on account of the mortgage. This proposition of law was afterwards reluctantly approved by the Supreme Court in the case of Kurtz v. Campbell, 218 Pa. 524, where the court said (page 527): "This case is clearly within

the rule of York Trust, etc., Co. *v.* Gallatin, 186 Pa. 150. The majority of the court are of opinion that on principle that case was erroneously decided, but as it has stood in the books for nine years and many contracts have been made in reliance on it, the principle of *stare decisis* should prevail, and the authority of that decision should not now be disturbed." But in a number of subsequent cases it was held by both the Supreme and Superior Courts of this state that the case of York Trust Company *v.* Gallatin was decided upon its own facts and this decision would not be extended to cover any other case in which the facts were not precisely similar, and that where a stockholder simply pledges his stock as collateral security and agrees to pay monthly instalments of dues and interest, the payment of dues on stock is not a payment on account of the loan. The value of the stock can be at any time applied by definite and distinct agreement between the building and loan association and the borrower to the reduction of his indebtedness; but this agreement cannot be made by the building and loan association on the eve of insolvency nor after insolvency; and in order that payments by way of dues on account of stock shall be applied to the cancellation of a mortgage, there must be a clear and specific agreement by both the borrower and the lender that the payments shall be so applied, and without such an agreement the amount of dues upon stock is not to be applied to the cancellation of the borrower's indebtedness. These principles are well established by many decisions: Freemansburg B. & L. Ass'n *v.* Watts, 199 Pa. 221; Globe Mutual B. & L. Ass'n *v.* Schutte, 29 Pa. Superior Ct. 265; Haspel *v.* McLaughlin-Lyons, 38 Pa. Superior Ct. 334; Haspel *v.* Moffitt, 32 Pa. Superior Ct. 344; Consolidated B. & L. Ass'n *v.* Shipley, 95 Pa. Superior Ct. 232; Leechburg B. & L. Ass'n *v.* Kinter, 233 Pa. 354; Kurtz *v.* Campbell, 218 Pa. 524.

There is no statement in the affidavit of defense that there was any agreement between the Pittsburgh Building and Loan Association and the defendant that the dues which he should pay on account of his stock were to be applied to a cancellation of his indebtedness. The affidavit of defense simply says that at the time when he borrowed from the Pittsburgh Building and Loan Association he was borrowing the sum of $1900, payable in monthly instalments of $9.50 on account of the principal of said debt, and $9.50 per month on account of the interest on said debt. The affidavit of defense does not even set up an assignment of the stock owned by the defendant to the building and loan association as collateral security for the payment of his indebtedness, but specifically avers that his stock was not so assigned to the association, and the bond signed by the defendant and admitted by him shows that the only agreement between the defendant and the Pittsburgh Building and Loan Association was that he was to pay to the said building and loan association the sum of $1900, with interest thereon in monthly instalments, or dues at the rate of 50 cents per share each and every month thereafter on nineteen shares of the capital stock of said association owned by said Walter H. Riggle until the whole amount of said debt and interest should be fully paid. There is no allegation in the affidavit of defense as to any special agreement at any time between the defendant and the Pittsburgh Building and Loan Association to the effect that his dues paid were to be applied to a cancellation of his indebtedness. The present case is, therefore, nothing but the usual one in which the borrower pays certain dues on account of stock, and it is well settled that under such circumstances the dues so paid, in case of insolvency of the building and loan association, are not to be applied to the reduction of the borrower's indebtedness. In our opinion, therefore, so much of the affidavit of defense as claims credit for the dues paid to the Pittsburgh Building and Loan Association by the defendant is also insufficient.

In the fifth place, the defendant contends that he is at least entitled to credit for the premiums paid by him on account of his loan.

There is no mention in the bond given by the defendant to the Pittsburgh Building and Loan Association of the amount of premium which the defendant was to pay. The obligation simply says: "together with such premiums as may have been bid or agreed upon in obtaining said loan in the manner and form prescribed in the by-laws of said association." No copy of the by-laws of this association is shown by the pleadings, and while it is alleged in the ninth paragraph of plaintiff's statement of claim that the defendant has paid interest and premium on the aforesaid obligation to April 17, 1930, and the affidavit of defense admits this, there is no mention of the amount of premium paid in any of the pleadings, except in the fourteenth paragraph of the affidavit of defense, where it is set forth: "At the time when he [the defendant] borrowed from the Pittsburgh Building and Loan Association, plaintiff through receiver in this case, that he was borrowing the sum of $1900, payable in monthly instalments of $9.50 on account of the principal of said debt; $9.50 per month on account of interest on said debt, and a further sum of $3.17 called for as a 'premium' in connection with said loan." So it does appear from the pleadings that the defendant has been paying from the time he got his loan until April 17, 1930, a premium of $3.17 per month on account of his loan, and as the affidavit of defense says there was no competitive bidding for said loan at the time it was made, then we can take it as established that no premium was bid by defendant for said loan, and, therefore, the premium paid must have been a fixed premium payable periodically.

The question for us to determine, then, is whether the defendant is entitled to a credit on account of his loan for the premium of $3.17 payable in a fixed amount monthly.

It is evident from the pleadings that the premium which the defendant was to pay was not a gross premium deducted from his loan at the time he received his money, because it is admitted by both plaintiff and defendant that the defendant, on July 18, 1924, received a loan of $1900, and to secure the payment of same gave to said building and loan association a bond and mortgage in the sum of $1900. Therefore, the premium which he was to pay must have been a fixed premium payable in instalments. It was not a premium bid for the loan at the time it was made, and if the defendant paid this premium in periodical instalments for at least two years, the payment must have been under some agreement between the defendant and the Pittsburgh Building and Loan Association or as fixed by the by-laws.

In order to decide this question of the right of the defendant to a credit for premiums paid by him, we can take judicial notice of the acts of assembly of this Commonwealth governing building and loan associations and also the general history of such associations.

The first act of assembly authorizing generally the incorporation of building and loan associations is the Act of April 29, 1874, § 37, P. L. 73. Therein it was provided that the premiums taken by a building and loan association for the preference or priority of such loans should not be deemed usurious; but the capital stock might be issued in series, in one or in successive series, in such amount as the board of directors or the stockholders might determine; that the officers of said building and loan association should hold stated meetings, at which the money in the treasury, if over the amount fixed by charter as the full value of a share, should be offered for loan in open meeting and the stockholder who should bid the highest premium for the preference or priority of loan should be entitled to receive a loan of not more than the

amount fixed by charter as the full value of a share for each share of stock held by said stockholder, etc.

The next act of assembly was the Act of April 10, 1879, P. L. 16, whereby building and loan associations were authorized to charge and receive the premium or bonus bid by a stockholder for preference or priority of right to a loan, in periodical instalments, which should be taken to be a payment as it fell due in contradistinction to a premium charged and paid in advance.

The next act was the Act of June 4, 1901, P. L. 403, by the terms of which building and loan associations were allowed to receive bids of premium or bonus for preference or priority of loan in writing, whether from members or other persons who were not members but intended to become such if loans were obtained by them, or to receive such bids from others duly authorized in writing by members or by persons intending to become such, but provided that such bids should be received only in open meetings as bids were then required by law to be received.

The next was the Act of May 14, 1913, P. L. 205, under the provisions of which building and loan associations were authorized to make loans to the members of the association who should bid the highest premiums for the preference or priority in procuring loans, and the borrower from such association might agree, in writing, upon a given rate of premium not to exceed 2 per centum per annum upon the amount of the loan in addition to the interest to be paid on such loan without bidding for preference or priority.

The next was the Act of April 8, 1927, P. L. 179, which amended the Act of 1913 so as to allow loans to be made to persons intending to become members of the association, but did not change the Act of 1913, providing for a fixed premium not to exceed 2 per centum per annum upon the amount of the loan. A further amendment was made by the Act of April 30, 1929, P. L. 901, but not in any matter which is material to the present case.

After the Act of 1874 was passed, and for many years thereafter, building and loan associations were chartered and authorized to issue certain amounts of capital stock. This capital stock was subscribed for by stockholders soon after the corporation was formed and if any stock was subscribed for after that time the subscriber, in order to become a member, would have to pay back dues from the time the corporation was formed until he became a subscriber, so that all of the shares of stock issued by the association would mature at the same time. Each week, at meetings of the board of directors, whatever money was on hand available for loan was sold to the highest bidder for a certain bonus or premium. This premium was added to the mortgage or obligation given by the borrower to the association and went into the general funds of the association before the association ran out. In order that there should be complete equality among the stockholders, every stockholder was required to borrow from the association an amount equal to the stock subscribed for by him. Therefore, when the stock of the association was finally matured, every member had paid a premium which was used for the purpose of increasing the value of his stock and, therefore, caused it to mature more quickly than it would if the stockholder had only paid dues and not a premium, and every stockholder alike paid a premium and participated in the premium paid by others, so that they were equally treated. When the stock of each stockholder had matured, then all of the loans were canceled and the corporation was ended.

Or the corporation issued its capital stock in series at such times and in such amounts as might be fixed by the board of directors, and each one of these series was carried on by the corporation as if it were a separate organization from the other series belonging to the corporation, and when the stock

in each series matured, then that stock was applied to the payment of the indebtedness due from each stockholder and the stock of that series was canceled and that series ended.

After the passage of the Act of 1913, a building and loan association could be formed which did not issue its stock in series at all. It simply issued stock up to the limit designated in its charter to any person who would subscribe therefor at any time. A certain amount was fixed as the value of each share of capital stock, either $100 or $200, and the stockholder agreed to pay dues of a certain amount each week or each month, and if he borrowed any amount from the association he agreed to pay interest at the rate of 6 per cent. per annum in periodical instalments, either weekly or monthly, and also agreed to pay in the same kind of periodical instalments a fixed amount as premium; and this premium could not exceed 2 per centum per annum upon the amount of his loan, as it was so limited by the Act of 1913. What amount was paid by the stockholder as dues went to his credit upon the books of the building and loan association; what he paid as interest, premiums and fines went into a general fund which, annually or semi-annually, was divided *pro rata* upon the books of the building and loan association and upon the stock of each stockholder as dividends upon his stock. Each stockholder, then, received, either annually or semi-annually, a dividend on his stock *pro rata* according to the number of shares held by him in the association out of the general fund received by the building and loan association from interest, premiums, fines and any other profits which the building and loan association might receive; and, of course, any losses which might be sustained by the building and loan association were deducted from this general fund.

As we understand it, practically all of the building and loan associations in this state are conducted and carried on at the present time in the manner which we have hereinabove last described, and that system of conducting a building and loan association has arisen since the passage of the Act of 1913. It can readily be seen that the method in which building and loan associations were operated in this state prior to the passage of the Act of 1913 was very different from the manner in which they have been conducted since that time.

The defendant contends that he is entitled to a credit on account of his loan of the premiums paid by him, which would amount to $218.73, sixty-nine months, from July 17, 1924, to April 17, 1930, at the rate of $3.17 per month. The plaintiff contends that as the premium charged the defendant on this loan does not exceed 2 per centum per annum upon the amount of his loan, the premium paid by him is to be considered just as interest, and as he has received his proportionate share of this premium periodically by dividends upon his stock, he is not entitled to a credit for it on account of the principal of his loan any more than he is entitled to a credit upon said principal for the interest paid by him.

This is a very nice question and one which, as we see it, is new and is not to be determined in the same manner as the question of a gross premium was determined by the courts prior to the Act of 1913. The defendant relies upon the decision of the Supreme Court in the case of Strohen *v.* Franklin Saving and Loan Ass'n, 115 Pa. 273 (1887). This case was a *scire facias* upon a building and loan mortgage after the association had passed into the hands of a receiver. The defendant was the owner of twenty-one shares of stock in the building and loan association of a par value of $200 each. He borrowed from the association $1932 and gave to the association a mortgage of $4200, which included a premium bid by him for priority of loan of $2268. The receiver claimed that he was entitled to recover the $4200, with interest, and the defendant claimed that he was required to pay nothing except what he

had actually received with interest. The court, in an opinion by Justice Paxson, held that the defendant should be charged with the sum actually received on his mortgage with interest on the *same and credited with actual* payments of interest, but he was not to be allowed credit upon his mortgage for the payments which he had made upon his stock, the court saying (page 279):

"The insolvency of the company, as before observed, puts an end to its operations as a building association; to a certain extent, it also ends the contract between it and its members, respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors and between the members themselves. As regards the latter, care should be taken to adjust the burdens equally and not to throw upon either borrowers or non-borrowers more than their respective share. That result may be reached by requiring the borrower to repay what he actually received, with interest. He would then be entitled, after the debts of the corporation are paid, to a *pro rata* dividend with the non-borrower for what he has paid upon his stock. He will thus be obliged to bear his proper share of the losses. To allow him to credit upon his mortgage his payments on his stock would enable him to escape responsibility for his share of the losses and throw them wholly upon the non-borrowers. In other words, the borrower would escape without loss. It will not do to administer the affairs of an insolvent corporation in this manner."

In that case the premium was a gross premium and, as it had not been paid into the association, but was merely a paper charge against the defendant, he was allowed, upon the insolvency, to have a credit upon his mortgage of the amount of this premium.

The defendant also relies upon the case of Twin Cities National Building and Loan Ass'n v. Lepore, 17 Pa. C. C. Reps. 426 (1896). This case was decided by the Court of Common Pleas of Allegheny County in an opinion by Ewing, P. J., and while we have great respect for any opinion of Judge Ewing, we are not bound by his decision in this case. The case was a *scire facias sur* mortgage issued by the Union Trust Company of Pittsburgh as receiver of the Twin Cities National Building and Loan Association against Rafale Lepore, and was decided upon a case stated between the plaintiff and the defendant. In the case stated it appeared that the defendant had borrowed $2500 from the building and loan association upon twenty-five shares of stock in the association and had given a bond and mortgage upon certain real estate owned by him in the City of Pittsburgh in the sum of $5000. The $2500 loaned to the defendant was paid to him in various amounts at various times from May 1, 1894, to Dec. 2, 1894. After the execution of said bond and mortgage the defendant paid dues, interest and premiums as prescribed by the said bond and mortgage and the by-laws of the said association until Oct. 8, 1895, in the sum of $523.80, of which sum $270 was in the nature of monthly payments on stock, or dues, and the balance, $253.80, was on account of interest and premiums. The plaintiff contended that it was entitled to receive from the defendant the full amount of said mortgage and all arrearages, and the defendant contended that he was required to pay nothing except the amount of money paid by it to him, with interest thereon from the date of such payment to the date of the appointment of a receiver, and that he was entitled to a credit as against this sum for all moneys paid by him to said association on account of interest and premiums.

The court held that this case was ruled by the cases of Strohen v. Franklin Saving and Loan Ass'n, 115 Pa. 273, and State Saving and Loan Ass'n v. Carroll, 15 W. N. C. 523 [15 Pa. C. C. Reps. 522], and that the defendant was entitled to a credit for all interest and premiums paid by him. We cannot

find the case of State Saving and Loan Ass'n v. Carroll at 15 W. N. C. 523, and it is probably, also, a lower court decision. The court held that the defendant was entitled to a credit for the premiums paid by him on account of his loan from the building and loan association, and in delivering the opinion of the court Judge Ewing said (page 429):

"In the cases cited the premiums were deducted from the face of the mortgage. In the present case they were payable monthly. In each case it was a rate of interest above six per cent. authorized by statute, the consideration of which is the guarantee of long time and small payments for the borrower's indebtedness.

"There is not any difference in principle, and should not be in practice, whether the premium excess of interest be taken from the face of the mortgage or be paid in instalments. When the association becomes insolvent, and is unable to perform its part of the contract, it is entitled to the amount it has in fact loaned, with interest thereon, less the amount paid by the mortgagor on the mortgage, whether it be in the nature of interest or premiums. The instalments on stock and fines go with the stock."

It is perfectly clear, then, that in this case the premiums were paid monthly and were not deducted from the face of the mortgage, as in the case of Strohen v. Franklin Savings and Loan Association, and the facts, then, in this case were not at all the same as in the Strohen case, and the learned court says: "In each case it was a rate of interest above six per cent. authorized by statute." That is not true, as the premium, under the various acts of assembly which we have hereinabove mentioned, was not usurious, provided it was fixed as set forth in the various acts of assembly, and provided, after the Act of 1913 was passed, that it did not exceed 2 per centum per annum of the amount loaned. The judge also says that "there is not any difference in principle, and should not be in practice, whether the premium be taken from the face of the mortgage or be paid in instalments." It might, perhaps, be true that there was not any great difference whether the premium was taken from the face of the mortgage or paid in periodical instalments as building and loan associations were operated in 1896 at the time this decision of Judge Ewing was rendered.

Under the Act of 1879, which was in operation in 1896, building and loan associations would still be operated in series and not as they have been operated since the passage of the Act of 1913, and, therefore, in our opinion, this case decided by Judge Ewing does not control the decision of the present case, as the circumstances are entirely different, and building and loan associations, after the Act of 1913 was passed, have been operated very differently from the manner in which they were operated prior to the passage of that act.

The defendant also relies upon the decision of the Superior Court in the case of Stoddard v. Kline, 51 Pa. Superior Ct. 16, and 51 Pa. Superior Ct. 23. These were appeals by both plaintiff and defendant from the decision of the Court of Common Pleas of Armstrong County in the case of Josiah C. Stoddard, Receiver of the Washington National Building and Loan Association of Washington, D. C., v. Peter H. Kline. In those cases the mortgagor was allowed a credit on account of his mortgage of the premiums paid by him to the building and loan association; but these decisions were based upon the fact that, as the Washington National Building and Loan Association was a foreign corporation and not authorized to do business in the State of Pennsylvania, the payment of premiums by the mortgagor was usurious and he was entitled to a credit for the premiums paid. These cases were decided in

1912, prior to the passage of the Act of 1913, and clearly do not support the defendant's contention, even if they had been decided after the passage of the Act of 1913, for, in the present case, the plaintiff is a corporation under the laws of the Commonwealth of Pennsylvania and entitled to all of the rights of such corporations.

As we see it, the premiums paid by the defendant in the present case went into the general funds of the association, the same as the interest or any other profits received by the association. It is really an excess interest which he pays, and having paid it as excess interest, and these premiums having gone into the general funds of the building and loan association, and having been distributed by the building and loan association as dividends *pro rata* to all of the stockholders, of which the defendant was one, he is not entitled to a credit on account of his mortgage of the premiums paid by him.

After a building and loan association passes into the hands of a receiver, the duties of the receiver are to close up the affairs of the building and loan association, and this is to be done as equitably as possible, as was said by Mr. Justice Fell in delivering the opinion of the Supreme Court in the case of Leechburg Building and Loan Ass'n v. Kinter, 233 Pa. 354, 356:

"The insolvency of the building association put an end to its operations as an association, and the duty of the trustee was to wind up its affairs in such a manner as to do equity between it and its creditors and between the stockholders. This is distinctly ruled in Strohen v. Franklin Saving Fund and Loan Ass'n, 115 Pa. 273, and the method of adjusting the equities between stockholders is defined in the opinion of the court, to wit, to require a borrower to repay what he had actually received, with interest, and to allow him, after all the debts are paid, a *pro rata* dividend with the non-borrowers on the payments made on his stock."

And, in our opinion, the only way in which the affairs of a building and loan association, as they have been conducted since 1913, can be equitably adjusted is to consider the periodical payments of premium exactly as interest and allow the receiver to recover from the borrower the amount received from the building and loan association, with interest at the rate of 6 per cent., deducting therefrom only the interest paid by the borrower to the building and loan association. If that is done, all of the stockholders are treated fairly and, the borrower receives, upon a distribution of the assets of the corporation, the value of his stock as increased by his dividends and dues *pro rata* with the other stockholders.

However, there are two reasons why, in our opinion, the Pittsburgh Building and Loan Association cannot retain the premiums paid by the defendant on account of the loan made to him by said building and loan association.

First. Because, under the Act of 1913, a building and loan association cannot charge a member any premium without bidding for preference, as provided in that act of assembly, if the premium charged exceeds 2 per centum per annum. According to the pleadings in the present case, the premium charged the defendant was $3.17 per month and for twelve months would amount to $38.04. Two per centum of the $1900 loaned to the defendant by the building and loan association would amount to $38, so that in this case the building and loan association did charge the borrower more than 2 per centum per annum, and it being admitted by the pleadings that there was no competitive bidding for this loan, the building and loan association is not entitled to the premiums paid by this defendant. While the amount of the excess charge is small, nevertheless we cannot see in principle where there is any difference between an overcharge which is small and one which is large, and

cannot see why the doctrine of *de minimis* should be applied in aid of the building and loan association and at the expense of the borrower.

Second. The Act of 1913 says: "It shall be competent and lawful for the borrower from such association to agree, in writing, upon a given rate of premiums," etc., and nowhere in the pleadings does it appear that the defendant did agree in writing upon a given rate of premium, and we think that, before a building and loan association can legally charge a fixed premium, as provided for in this act of assembly, it must show that the borrower did agree in writing upon a fixed rate of premium before it can require or retain such premiums.

In our opinion, then, the plaintiff in this case cannot legally retain the premiums paid by the defendant. These premiums amount to $218.73, being sixty-nine months at $3.17 per month.

### Order.

Now, Dec. 1, 1930, the affidavit of defense filed by the defendant in this case is adjudged to be insufficient, except as to the premium paid on account of his loan from the Pittsburgh Building and Loan Association, and the prothonotary is directed to enter judgment in favor of the plaintiff for $1900, with interest from April 17, 1930, at the rate of 6 per cent. per annum, and an attorney's commission of 5 per centum upon said principal and interest, deducting, however, therefrom the amount of premiums paid by the defendant, $218.73, the amount due to be liquidated by the prothonotary.