## Ohnstrand's Estate

*Federico F. Mauck* and *Larzelere & Wright,* for accountant.
*Frank J. Bradley* and *James F. Boylan,* for claimant.

HOLLAND, P. J., October 10, 1932.—Aberth E. Ohnstrand died on August 31, 1931, intestate, and letters of administration on his estate were granted to the accountant, his surviving wife, on September 10, 1931.

Decedent was survived by no issue. He was survived by his father and mother, Hannah and Enoch Ohnstrand, who are living and of full age. At the time of his death the decedent was possessed of personal estate of the inventory value of $14,521.44.

The account was filed April 27, 1932, showing a balance for distribution amounting to $11,863.34, composed of claims by decedent against various concerns as set forth on page 4 of the account carried at $10,562.86 and cash.

Charles H. Johnson presented a claim for $1,000 and W. I. Gustafson presented a claim for $360.29. Both claims were admitted to be correct and are allowed.

Pennarr Endowment Building and Loan Association presented a claim for $2,529.26 at the audit. Claimant having had insufficient notice of the audit to file its claim in proper form at that time, we granted it an extension with accountant's consent. A formal claim was filed subsequently, as were briefs by claimant and accountant, in support of and in opposition to it, respectively.

The claim is based on a bond and warrant secured by a building and loan association second mortgage, both executed jointly by decedent and Linnea Ohnstrand, his wife, in favor of claimant in the principal sum of $3,400, upon premises title to which was held by decedent and his said wife as tenants by entireties. The bond is dated October 4, 1928, and provides that it shall be payable at any time within 1 year from the date thereof. Both the bond and mortgage are in the usual building and loan association form for such instru-, ments and provide, more specifically, for the payment of interest on the principal sum at 6 percent per annum in monthly instalments, a monthly premium of $4.25, and a monthly contribution of $17 on 17 shares of claimant's capital stock. Said shares of stock were assigned by decedent and his wife to claimant as collateral security for the loan.

Claimant now demands that the sum of $2,529.26 "be awarded to the accountant to be held by her against default in said bond and warrant". That sum is arrived at by giving credit against the principal due for $816, being 48 monthly dues payments of $17 each, and $54.74, being the profit of the association allocated to these 17 shares: a total credit of $870.74.

Claimant does not contend that there has been any default in compliance with the conditions of the bond, recognizing doubtless the well-settled construction of building and loan association mortgages that, although the bonds accompanying them are customarily made payable within one year, the expiration of that period without repayment of the loan does not of itself constitute a default, and here payments of interest, dues, and premiums are all up to date.

Claimant relies on the general principle that where a bond accompanies a mortgage the bond is the principal evidence of the debt, and upon distribution of the estate of a deceased obligor the holder of the bond is entitled to share with decedent's other creditors notwithstanding that he holds the mortgage as collateral security for the debt, or that the debt is not presently due.

Accountant admits the correctness of this principle when applied to an ordinary straight mortgage bond but contends that building and loan association bonds and mortgages are sui generis and that the difference between the two render that principle inapplicable here. Accountant also admits that her contention cannot be sustained if we conclude that these distinctions urged are insufficient. Neither the diligence of counsel nor our own research have disclosed a prior decision of this question.

To establish the vital distinction necessary to remove this case from the application of the principle stated, accountant contends that a building and loan association mortgage loan provides for the ultimate liquidation of the debt through instalment payments on stock in the form of monthly dues; and that the principal debt never will be payable except in this manner; that in the absence of a default under the obligations of the bond or the insolvency of the association it necessarily follows that the shares of stock will ultimately be fully paid and the mortgage debt liquidated; that in the absence of a default the association cannot foreclose or levy execution on a judgment on the bond; and that a building and loan association bond and mortgage is not due at any certain time, but only when the shares of stock are fully paid.

It is true that a building and loan association mortgage loan contemplates the ultimate liquidation of the debt, but so does a loan secured by a straight mortgage. The very essence of a building and loan mortgage loan is that a scheme is provided whereby the loan can be ultimately repaid. But it is not our understanding of building and loan association law that the instalment payments on the stock necessarily are in liquidation of the debt, as accountant

contends. On the contrary, the payments are to mature the stock which, when fully paid, is then applied in liquidation of the debt. "The whole scheme of the transaction between the association and the borrower is that the borrower's loan shall be paid off by the regular maturing of the shares of the association . . . ": Nicholson, Penna. Law of Real Estate (3d ed.), 497. This distinction between repaying the loan in instalments and repaying it by maturing and exchanging therefor shares of stock, is brought out clearly by Mr. Justice Fell, speaking for the court in Freemansburg Building and Loan Association v. Watts, 199 Pa. 221, 228: "In carrying out the plan on which building associations are organized and conducted, it is not intended that a stockholder, who borrows of the association will discharge the debt he incurs by direct payments on account of it. He pays at stated periods the dues on his stock, the interest on the money borrowed, and when the premium bid for the loan has not been deducted, the instalments on it. When by the receipt of dues, interest, premiums and fines for nonpayment of dues, all of the stock of the association or of the series to which the borrower's stock belongs, becomes full paid or matured, the value of his stock equals the amount of his debt, and the transaction is then ended by the surrender of the stock by him and the cancellation of his obligation by the association."

Suppose an ordinary bond and mortgage were given to a trust company, payable in 5 years, and each month the mortgagor deposits in a savings account in the trust company an amount which in 5 years will be sufficient, with the interest earned, to pay off the mortgage. Those monthly payments are no more made on account of the loan than are the monthly dues payments on the stock of a building and loan association by a borrower therefrom. Conceivably, the mortgagor might arrange with the trust company actually to apply at stated periods a portion or the total of his payments in reduction of his loan; and likewise the borrower-stockholder of a building and loan association might direct that the association so apply his dues, but a specific direction to that effect would be necessary and we have no evidence of any such direction here. The mere assignment of the stock as collateral security is not of itself sufficient to constitute an appropriation of stock payments to the debt. The right so to appropriate the stock payments is not confined to the stockholder, but may be exercised by the association upon default, as expressly provided in the bond.

That the distinction between construing payments as made on the stock and construing them as made on account of the debt is a substantial one is illustrated by the situation upon insolvency of a building and loan association. The stockholder may not then set off the value of his stock against the amount of his loan, but, as a debtor to the association, must pay the entire amount he received and, as a stockholder, is entitled only to a pro rata dividend, the same as all other stockholders: Strohen v. Franklin Saving Fund and Loan Assoviation, to use, 115 Pa. 273. The very essence of this well-established result is that the payments were not on account of the debt but on the stock.

We cannot subscribe either to accountant's contention that the principal debt can never be payable except through the instalment payments on stock, for the borrowing stockholder may at any time repay his loan, thus terminating the debtor character of his dual relationship while maintaining his stockholder character by continuing payment of his monthly dues. Or he may direct an appropriation of his past payments on account of the loan, pay the balance remaining, and thus terminate both relationships.

Conceding the correctness of accountant's contention that in the absence of a default the association cannot foreclose or levy execution on a judgment

entered on the bond, we do not see its materiality here. The right to foreclose any mortgage by sci. fa. or proceedings on the bond is founded upon a default for the necessary length of time, whereas the right of a creditor of a decedent to share in the distribution of his estate is not in any way founded upon a default. If it were, then the holder of a straight bond and mortgage not yet due would be likewise excluded from such participation, and accountant admits that that is not the law. Warnock Building Ass'n v. Fride et ux., 9 D. & C. 152, is cited as authority, and in that case the court substantiates accountant's contention but, while denying the association's right to levy execution until 3 months after the borrowing stockholder became in default, goes on to say that the association may still enter judgment on the bond, as the warrant to confess judgment was a general one and in no way conditioned upon a default. Nor is claimant's right as a creditor here conditioned upon a default.

Conceding also that it is correct that a building and loan association bond and mortgage is not due until the shares of stock are fully paid for, a date not determinable at the time of executing the agreement, whereas in a straight bond and mortgage the date is definitely fixed in advance, we likewise cannot see the materiality of this difference here. While the due date of this obligation is indefinite, it is not affected thereby for uncertainty, because it is upon an event which, as accountant points out, is bound to happen unless the stockholder defaults or the association becomes insolvent, and that, of course, may not be presumed. The definitely fixed date of the one gives rise to no greater equities for its holder than the indefiniteness of the other.

Claimant has, as security for the loan to decedent and his wife on this bond, a second mortgage and shares of stock. The basic fact that it holds the stock as security only is in no wise affected by the inevitability of the repayment of the loan if all payments due on the stock are made. The debt continues to exist if the "scheme of the transaction" be followed out until the fully-paid shares are surrendered therefor.

In our opinion the question at hand is governed by the admitted principle above stated as applicable to creditors claiming under bonds secured by straight mortgages or notes not presently due. The claim of Pennarr Endowment Building and Loan Association is allowed and there is awarded back to accountant the sum of $2,618.80 to be held by her against default in said bond and warrant.

Harry D. Oliver, Jr., presented a claim for $987.64 under an agreement of partnership with the decedent. We disclaimed jurisdiction to hear the claim, and the parties in interest have agreed that the same shall be prosecuted in the court of common pleas. The accountant requested and there will be awarded back to her the sum of $1,000 to abide the determination of said suit.

The accountant requested and is allowed the following additional credits:

| | |
|---|---:|
| Cost paid for filing account over amount from which credit is taken | $ 17.50 |
| Loss on settlement of claim against Jamestown Metal Products Co. | 247.90 |
| Widow's exemption | 500.00 |
| Costs of petition for widow's exemption | 1.50 |
| Affidavit to petitions for distribution and widow's exemption | 1.00 |

The transfer inheritance tax due the Commonwealth has not been paid. The amount thereof as determined by proper appraisement is awarded to the register of wills in this distribution and will be shown in the schedule of distribution hereinafter directed to be prepared.

By their assignments in writing bearing date September 25, 1931, and duly acknowledged, a copy of which was offered in evidence at the audit and is hereto attached, Enoch Ohnstrand and Hannah Ohnstrand, the father and mother of the decedent, have sold, assigned, transferred, and set over unto Linnea S. Ohnstrand, the widow, any and all of their right, title, interest, claim, and demand of and to this estate.

Out of the net ascertained balance for distribution there is awarded to Charles H. Johnson his claim of $1,000, and to W. I. Gustafson his claim of $360.29. The balance then remaining for distribution, subject to the payment of transfer inheritance tax, is awarded to Linnea Ohnstrand, the widow.

The account and petition for distribution are hereto attached.

The account is confirmed.

And now, October 10, 1932, this adjudication is confirmed nisi. If no exceptions are filed within 10 days from this date the adjudication is confirmed absolutely according to rule, and counsel for the accountant will forthwith prepare a schedule of distribution and certify that the same is correct and in conformity with this adjudication, which, when approved by the court, will be attached to and form part of the same; and Linnea Ohnstrand, administratrix as aforesaid, will pay the distributions herein awarded.

From Aaron S. Swartz., Jr., Norristown, Pa.